## THE STATE v. MARSHALL, A SLAVE.

1. Notwithstanding the enumerated causes of challenge in the Penal Code, the Court may, in its discretion, reject such as are unfit or improper persons, to sit upon the jury, and may excuse those from serving who, for reasons personal to themselves, ought to be exempt from serving on the jury. So, also, the Court may reject any juror who admits himself open to any of the enumerated challenges for cause, without putting him upon the prisoner.

2. An application to an attorney at law, by a colored person, to draw a petition to the Legislature for his freedom, is not a priviledged communication between attorney and client. Quere, if the disclosure had been of the *facts* upon which he rested his claim to freedom.

3. The owner of a slave is a competent witness for the State, upon a trial of the slave for a capital offence.

4. It is competent to prove, on the trial of a colored person for a capital offence, charged in the indictment as a slave, that he admitted himself to be a slave. But where the proof was, that the prisoner had brought to the witness a bill of sale of himself to one E, transferred to the witness by E, which was objected to, because the bill of sale was not produced—Held, that although this might be considered as an admission by the prisoner, of his *status*, and that it was not therefore necessary to produce the instrument by which it was evidenced, yet, as the jury may have been misled, and probably acted on the belief that the bill of sale was proof, that the prisoner was, or had been the slave of E, in *favorem vitæ*, it was proper there should be a new trial.

Novel and difficult questions from Mobile.

THE prisoner was indicted in the Circuit Court of Mobile, for burglary. The indictment contained two counts, in one of which the prisoner is charged to be the property of Joseph Bryan, and in the other, the property of some one unknown. The jury found a general verdict of guilty, upon which the Court passed sentence.

. Pending the trial, a bill of exceptions was taken, by which it appears, that upon the empannelling of the jury, one George W. Gaines was sworn to answer questions, touching his qualifications, and to the question asked by the Court, " have you any fixed

The State v. Marshall, a slave.

opinion against capital or penitentiary punishments ?" answered, that he had as to capital punishments." Upon which the Court set him aside as a juror, without calling upon either the prisoner or the State to challenge him.

William B. Sayre, being also called as a juror, and answering that he "was not a house holder, or free holder," was in like manner directed to stand aside.

Another juror being called and empannelled, the counsel for the prisoner, for the first time signified their dissent to the Court setting aside jurors who were challengeable for cause, when the Court recalled Sayre, and called upon the State to challenge or accept him—the State accepted him, and he being put upon the prisoner, and the prisoner neither accepting or challenging, but standing mute, the Court directed the juror to stand aside.

Two other persons were also called as jurors, who, on being questioned as to their qualifications, said upon oath, that they did not understand the English language sufficiently well to serve as jurors, and thereupon the Court set them aside, without putting them upon either the State or the prisoner.

Upon the trial, the prisoner proved that he was a bright mulatto, and that for a number of years he had acted as a free person—that he owned property, or claimed it, and had made contracts as a free person, To prove that he was a slave, the State offered as a witness Joseph Bryan, charged in the first count of the indictment, to be the owner of the prisoner, who stated that he did not consider himself to be the owner of the prisoner. That some six or seven years before, a bill of sale of the prisoner had been transferred to him, by Isaac H. Erwin ; that in his opinion he had acquired no right of ownership under the bill of sale, that it was brought to him by the prisoner—that he had not given Erwin any consideration for it, nor had he ever conversed with Erwin in relation to it. The prisoner objected to the testimony, because of the interest of the witness, and because he could not speak of an instrument of writing not in Court. The Court overruled the objection, and permitted the witness to testify.

The State then offered B. B. Breeden, Esq. who testified that several years before, the prisoner had applied to him to draw up a petition to the Legislature for his freedom. Witness said, that he prepared the petition, but that the prisoner never called for it,

nor had he paid witness for it.   The witness was an attorney at law, and the application was made to him at his office.   The prisoner objected to this testimony going to the jury, because the facts were confidentially disclosed to the witness as an attorney at law, and because the prisoner could not admit that he was a slave.   The Court overruled the objection.

The prisoner being convicted, moved in arrest of judgment, because the verdict of the jury was general, and did not state upon which count of the indictment they found the prisoner guilty, and did not ascertain whether he was the slave of Joseph Bryan, or of some person unknown.   The Court refused to arrest the judgment, and certified the several matters above as novel and difficult.

HOPKINS and DARGAN, for the prisoner, made the following points :

The jurors were improperly set aside by the Court, although challengeable for cause.   There was no authority whatever for discharging the jurors who professed not to know the English language.   If that were so, of which there was no proof, they were still competent jurors.

The confession to Breeden, as an attorney at law, was a priviledged communication.   [2 Russ. 554 ; 2 Starkie, 400 ; 2 Brod. & Bing. 1 ; 6 Madd. Rep. 47.]

The testimony of Bryan as to the bill of sale, was incompetent proof,   [Archbold's P. 106.]

ATTORNEY GENERAL and PHILLIPS, contra, cited 1 Porter, 309 ; 2 Mason, 91 ; 4 State Trials, 1, 750 ; 14 Pick. 422 ; 2 Starkie, 396 ; 6 Madd. Rep. 47 ; 1 Blackford, 317 ; 6 Rand. 667 ; 9 Porter, 126.

ORMOND, J.—The Penal Code provides, that the existence of certain facts, when ascertained in reference to one, summoned as a juror, in a criminal case, shall be a good challenge for cause. The plain design of the statute was, to secure a fair and impartial trial, by the selection of an impartial, intelligent jury, and to accomplish that object, it secures to the accused the right to object to jurors summoned to try him, who are liable to certain specified objections.   The argument, in effect is, that the provision

is for his benefit, and that therefore, he has the right to waive the objection, and accept the juror. It is only necessary to state some of these causes of challenge, to see that this argument is untenable. Can it be possible, that it must be left to the prisoner to say, whether he will be tried by one connected with him, by consanguinity, or affinity—or who has a fixed opinion, as to his guilt or innocence—or who has an interest in his conviction or acquittal? It is true, the proposition does not seem so clear, when applied to the want of a house hold residence, as an objection to a juror, but as the Legislature have thought proper to make this a challenge for cause, in legal estimation it stands upon the same footing. The right to challenge, is a legislative declaration of the unfitness of the person for that particular cause, to serve as a juror, and therefore the prisoner, in contemplation of law, cannot be prejudiced by his rejection by the Court; the design of the Legislature being, not to enable him to select such a jury as he might desire, but to secure to him the right of rejecting unfit persons summoned as jurors. In a word, it was not the intention of the act, to furnish the prisoner with the means of packing a jury for his trial, but to secure him a fair trial, by an impartial, intelligent jury.

It was not the intention of the framers of the act, that these enumerated causes of challenge, should be exclusive of all others; as it does not include persons, who by law are rendered infamous from a conviction for crimes—infants, idiots, insane, or diseased persons; yet, it is perfectly obvious such persons are not qualified to serve as jurors. Further, jurors free from any objection at the time they were selected, and summoned, might become so afterwards. It is equally clear, that it was not the design of the Legislature, to impair the discretionary power of the Court, to set aside any one, summoned as a juror, who, from any cause, was unfit to serve as a juror, or who, from reasons personal to himself, ought to be excused from this service. This power, so necessary to the proper exercise of the functions of the Court, is expressly recognized in the 13th section of the 10th chapter, as it respects grand jurors; and in the 50th section, power is given to the Court to discharge a juror, for sufficient cause, after the trial has commenced—to supply his place, and commence the trial anew. We are not aware that this discretiona-

39

ry power has ever been doubted, nor are we able to perceive how justice could be properly administered without it.

Of all the discretionary powers of the Court, this would seem to be least liable to abuse, as it is altogether conservative. Its exercise is confined to the exclusion of improper or unfit persons as jurors, and how this could prejudice the accused, it is difficult to conceive. If, in its exercise, the Court should reject a person qualified to sit as a juror, how does that prejudice the accused? If a juror disqualified by law, is put upon the prisoner, the case would be different; but if he is tried by an impartial jury, he has sustained no injury. This is the decision of this Court, in the case of Tatum v. Young, 1 Porter, 298, and it has not since been questioned. To the same effect is the decision of Judge Story, 2 Mason, 91.

These views dispose of all the questions relating to the rejection of jurors, and we now proceed to the consideration of the other questions raised upon the record.

Confidential communications between attorney and client, are priviledged, and cannot be divulged. The rule is not confined to communications in reference to suits in existence, or expected to be brought; it is sufficient if the attorney is consulted professionally. [Walker v. Wildman, 6 Madd. 47.] As, if he be employed to draw a deed, [Parker v. Carter, 4 Munford, 285,] or to procure a sale under a mortgage, where there is a statutory foreclosure. [Wilson v. Troup, 2 Cow. 197.] No inference can arise from the statement upon the bill of exceptions, that the communication was confidential, but the inference must be that it was not, as the only fact disclosed, was one which it was proper to make public. If the disclosure had been of the facts, upon which the prisoner rested his application to the Legislature, it might be different. It is not sufficient to exclude the testimony, that the witness was an attorney at law. The privilege of withholding the facts disclosed, does not depend upon that circumstance, but that the disclosure was made to him *profession-ally*. That does not appear from the facts disclosed, or from the nature of the employment, which was such as did not require legal skill, in its execution. We think, therefore, that this case is not brought within the rule.

The propriety of the admission of the witness Bryan, depends upon the question of interest. An interest to disqualify a wit-

The State v. Marshall, a slave.

ness, must be a pecuniary interest in the event of the suit, inclin ing him to the side of the party calling him.   He was called to prove, that the prisoner was a slave, being charged in one count of the indictment to be the owner of the prisoner.   Upon the assumption that he was the owner of the prisoner, he was clearly competent to testify for the State, as it was his interest to prevent a conviction, the consequence of which would be, the certain loss of one half his value, and the possible loss of his entire value.

It is however urged, that he has an interest in the record, which disqualifies him from being a witness.   This argument is founded on the statute making compensation to owners of slaves executed for crimes, and is as follows : " Whenever, on the trial of any slave for a capital offence, the jury shall return a verdict of guilty, the presiding judge shall have the same jury sworn to assess the value of said slave, and the verdict of said jury, shall be entered on the record of the Court, and the master or owner of such slave, producing to the Comptroller of Public Accounts, a transcript from the record of the Court, regularly certified by the clerk, and the certificate of the sheriff, that any slave has been executed in pursuance of the sentence of the Court, shall be entitled to receive a warrant on the Treasurer for one half of the amount assessed by the jury, to be paid out of the funds hereinafter provided for that purpose." [Clay's Dig. 474, § 19.]   The succeeding section authorizes the jury to refuse compensation to the master, when he has been to blame for the offence committed by the slave.

From this, it appears, that the verdict, and judgment against the slave, does not entitle the owner, or master, to the compensation provided by the statute ; that right, is to be ascertained by a subsequent proceeding, and may be refused upon that proceeding.   The previous verdict and judgment establishes nothing, but the condemnation of the slave ; the right of the master to compensation, and its amount, depends upon the evidence to be adduced upon the subsequent proceeding.

Objection was also made to the testimony itself; what the objection was, does not very distinctly appear; but giving to the bill of exceptions a liberal interpretation, it may be considered, as a motion to exclude that portion of the testimony of the witness, which related to the bill of sale from Erwin, upon the ground that it was secondary

evidence. It is very clear, that the bill of sale, was not evidence before the jury, it not being produced, and its execution proved, or its absence accounted for, so as to let in secondary evidence of its contents ; and if the object of the testimony, was to prove that the prisoner had once been the slave of Erwin, it should have been excluded.

It does not however, distinctly appear. that this was the purpose for which the testimony was offered, as there is an aspect of the case, in which it was certainly competent.

It appears, that the prisoner brought to the witness, a bill of sale of himself, which had been transferred by Erwin to the witness, who had never conversed with Erwin in relation to it, or had ever paid any consideration for it. This transaction occurred some six or seven years before the trial, since which time it appears, the prisoner has been acting as a free man, as the witness stated, that he did not consider himself as the owner of the prisoner.

Upon the assumption, that the prisoner knew that the paper he gave to the witness, was a bill of sale of himself, transferred to the witness, which we think from the circumstances may be fairly presumed, it was an *act* distinctly admitting his *status*, and can be understood in no other light, than that of a request to the witness to stand as his nominal owner. Considered in this aspect, the mention by the witness, of the fact that the prisoner brought him a bill of sale, was wholly unimportant, as it proved nothing but the admission of the prisoner, that he was a slave, which would have been quite as potent, without the bill of sale, as with it.

It is probable however, that the jury considered the bill of sale in evidence before them, and establishing the fact, that the prisoner either was then, or had been the slave of Erwin, and in *favorem vitae*, as the jury may have been, and probably were misled, by the permission to the witness to speak of the bill of sale, without limiting the evidence to the fact of the admission of the prisoner, to be inferred from the *act*, we think there should be a new trial. This renders it unnecessary to consider the matters urged in arrest of judgment.

Let the judgment be reversed, and the cause remanded, for another trial, or until the prisoner is discharged by due course of law.

COLLIER, C. J.—I am inclined to think, that the fact of the prisoner's carrying a bill of sale from Erwin to the witness, cannot be construed as an admission by the former that he was a slave. There is no proof that the prisoner was aware of the contents of the bill of sale, or that previous, or subsequent to that time, he had spoken to the witness on the subject, requested the witness to purchase him, or admitted that he was in servitude to Erwin or any one else. In other respects I concur in the opinion pronounced by my brother ORMOND.

GOLDTHWAITE, J.—My judgment, uninfluenced by the opinions of my colleagues, would lead to an affirmance of the judgment of the Circuit Court, on all the questions reserved ; but in a capital conviction, I cannot consent that it shall stand when any member of the Court entertains a serious doubt of its correctness.