POSTAL LAWS—CHARGE TO GRAND JURY IN RELATION TO OFFENSES AGAINST POSTAL LAWS. See Case No. 18,248.

POSTAL LAWS—CHARGE TO GRAND JURY IN RELATION TO VIOLATION OF POSTAL LAWS. See Case No. 18,-251.

POTOMAC BLDG. ASS'N (JOHNSTON v.). See Case No. 18,303.

PRIZE CASES—COSTS, FEES, AND COMPENSATION IN PRIZE CASES. See Case No. 18,283.

PROCESS—CHARGE TO GRAND JURY IN RELATION TO THE OBSTRUCTION OF LEGAL PROCESS. See Case No. 18,250.

PUBLIC OFFENSES — CHARGE TO GRAND JURY IN RELATION TO INVESTIGATION OF PUBLIC OFFENSES. See Case No. 18,255.

# R.

RAINEY (FIELDS v.). See Case No. 18,296.

RAINEY (LATTON v.). See Case No. 18,-296.

RATCLIFF (JOHNSTON v.). See Case No. 18,303.

REGISTERING, FEES FOR. See Case No. 18,295.

REVENUE—CHARGE TO GRAND JURY IN RELATION TO FRAUDS ON REVENUE. See Cases Nos. 18,247 and 18,-251.

REVENUE—CHARGE TO GRAND JURY IN RELATION TO INTERNAL REVENUE LAWS. See Case No. 18,248.

ROSS (BLOOMER v.). See Case No. 18,242.

RUDDELL (BLAKELY v.). See Case No. 18,241.

# S.

SECRETARY OF TREASURY (BELL v.). See Case No. 18,231.

SECRETARY OF TREASURY (CLARKE v.). See Case No. 18,280.

SECRETARY OF TREASURY (JUDSON v.). See Case No. 18,304.

SEVIER (BENTLEY v.). See Case No. 18,-233.

SMITH (GORMLEY v.). See Case No. 18,-298.

STEAM VESSELS—CHARGE TO GRAND JURY IN RELATION TO THE ACT OF CONGRESS OF JULY 7, 1838. See Case No. 18,253.

# T.

TREASON—CHARGE TO GRAND JURY IN RELATION TO LAW OF TREASON. See Cases Nos. 18,269–18,277.

TRUMBO (MANIER v.). See Case No. 18,-309.

# U.

UNITED STATES (BARGIE v.). See Case No. 18,229.

---

## Case No. 18,312.

### UNITED STATES v. BLODGETT.

[35 Ga. 336.] [1]

District Court, S. D. Georgia. Nov. Term, 1867.

GRAND JURY — OATH PRESCRIBED BY ACT 1862 — AIDING REBELLION—WHO MAY CHALLENGE— WHEN CHALLENGE TO BE MADE—TESTIMONY.

1. Although the oath prescribed by the second section of the act of June 17, 1862 [12 Stat. 430], will not, except at the instance of the attorney representing the government, be administered to jurors in the federal courts, yet, by the first section of said act substantially the same matters specified in the oath are made cause of challenge; and it is the right of any party to a case, civil or criminal, to challenge for such cause the jurors about to take action on such case. It does not follow, because the government attorney only can call for the oath to be administered, that he alone can urge the disqualifying conditions laid down by the first section of the act.

2. If, under said act, and by a party other than the government, jurors be challenged, the challenge may be disposed of by allowing those who deem themselves disqualified under the first section of the act to retire from the panel without any sworn evidence of their incompetency.

3. Grand jurors may, for cause, be challenged by any person to be affected by their finding. The right is not restricted to such persons as are in prison or under bail upon charges of crime; it may be exercised by

1 [Reported by Logan E. Bleckley, Esq.]

one who, though still at large, has been warned by the prosecuting attorney of the court that he will be made, during the term, the subject of an indictment for perjury.

4. Where there is reasonable excuse for the delay, challenges to members of the grand jury will be heard after the body has been fully organized.

5. The accused party has no right to submit evidence in his behalf to the grand jury, not even with the consent of the prosecuting attorney. The grand jury are to examine the foundation on which a charge is made by the government, not that on which it is denied by the alleged offender.

In the matter of the oath to be taken by jurors in the federal courts, under the act of June 17, 1862 [12 Stat. 430], in the case of the United States against Foster Blodgett.

ERSKINE, District Judge (charging grand jury). On the first day of the present term (November 7th) you were empannelled and sworn for this judicial district,—your foreman, and each of you, then taking the ancient common-law oath of grand jurors, and the court, at the same time, delivering to you its general charge. The court feels that it is due to you, as well as to the district attorney and the counsel for the challenger, Foster Blodgett, that such remarks as may be deemed proper to be made, and such decision as may be pronounced, be addressed to you, rather than to the learned counsel themselves; because the matters in controversy concern, and are directly against, the legal status of several members of your body. Blodgett comes here before the court, and demands the right to challenge the polls; and for this he relies on the first section of the act of congress of June 17, 1862, which statute is entitled "An act defining additional causes of challenge, and prescribing an additional oath for grand and petit jurors in the United States courts." The first section declares that, "in addition to the existing causes of disqualification and challenge of grand and petit jurors in the courts of the United States, the following are hereby declared and established, namely: Without duress and coercion to have taken up arms or to have joined any insurrection and rebellion against the United States; to have adhered to any rebellion, giving it aid and comfort; to have given, directly or indirectly, any assistance in money, arms, horses, clothes, or anything whatever, to or for the use or benefit of any person or persons, whom the person giving such assistance knew to have joined, or to be about to join, any insurrection or rebellion, or to have resisted, or to be about to resist, with force of arms, the execution of the laws of the United States, or who he had good ground to believe had joined, or was about to join, any insurrection or rebellion, or had resisted, or was about to resist, with force of arms, the execution of the laws of the United States; and to have counselled and advised any person or persons to join any insurrection and rebellion, or to resist with force of arms the laws of the United States." 12 Stat. 430.

The oath embodied in the second section—and which substantially follows the language of the disqualifying causes enumerated in the first—will be read to you, not that you may take or decline it, for it can be presented under the second section only, and at the suggestion of the prosecuting officers of the government, but upon hearing it read, you will be better able to conclude whether you are, or are not, vulnerable to any one or more of the disqualifications mentioned in the first section. If you find that you are, you may retire from the panel. And, in my judgment, the defect, in a case of challenge for cause like this, may, in this manner, be shown. U. S. v. Cornell [Case No. 14,868]; State v. Marshall, 8 Ala. 302.

The following is laid down in a late accurate work on Criminal Procedure: "The most natural method is to require the witness to declare the matter under oath, on the voir dire. But witnesses are not generally required to answer questions which will tend to their disgrace; therefore, in England, the inquiry whether the juror has delivered an opinion adverse to the prisoner cannot be put to the juror himself, but it must be shown by other evidence. This point has been held the same way in some of our states. But generally in this country this class of questions is allowed to be put by the parties directly to the jurors; and in some of our states this doctrine is also aided by express statutes. When this is not done, and even when it is, the court will sometimes, in aid of the general object, and without prejudice to other methods, call upon the jurors, collectively or singly, to declare if they know any impediment to their serving, or if they are obnoxious to a particular objection which may have been suggested." 1 Bish. Cr. Proc. § 795. And see Id. § 768; Cook's Case, 13 How. St. Tr. 311, 337; Respublica v. Dennie, 4 Yeates, 267; McCarty v. State, 26 Miss. 299. See concluding sentence in section 2, Act June 17, 1862 (12 Stat. 430). The challenger states in his affidavit, that the district attorney distinctly promised him that he should be permitted on the trial before the grand jury to have evidence in his defence laid before them. No such promise or agreement can have the sanction of this court. To allow evidence, either oral or written, to go before the grand inquest, on behalf of a defendant, would be subversive of the ancient and well-settled rules of courts of justice. McKean, C. J., in Respublica v. Shaffer, 1 Dall. [1 U. S.] 236, said: "It is a matter well known, and well understood, that by the laws of our country, every question which affects a man's life, reputation, or property must be tried by twelve of his peers; and that their unanimous verdict is, alone, competent to determine the fact in issue. If, then, you undertake to inquire, not only upon what foundation the charge is made, but, likewise, upon what foundation it is denied, you will, in effect, usurp the jurisdiction of the petit jury, you will supersede the legal authority of the court in judging of the competency and admissibility of witnesses, and, having thus undertaken to try the question, that question may be determined by a bare majority, or by a much greater number of your body, than the twelve peers prescribed by the law of the land."

Foster Blodgett does not ask to challenge the entire panel, but he avers that there are individual disqualifications attaching to particular jurors, because of their being within one or more of the clauses of the first section of the statute. In his petition, of file in this court, and which is before you, he states, among other matters, in substance, that he is informed and believes that a charge for perjury is now pending before you, but that as yet no presentment has been made, nor indictment found and returned, into court; that most of you are, under this statute, incompetent to inquire into his case; that he does not believe he can have a fair and impartial investigation of his case before you, or receive justice at your hands. He sets forth the names of the persons to whom he objects, and interposes a challenge to each.

It was contended by the district attorney that, under this statute, it is only the government that possesses the right to challenge. This court, at the last term, in the case of U. S. v. Cohen [unreported], which was an action of debt on bond, ruled that under the first section, the defendant, as well as the United States, was free to challenge the polls. And such is still the opinion of the court; nor can I perceive any difference in this respect between a grand and petit juror—between a civil suit and a criminal prosecution.

It is the general, if, indeed, it is not the universal, doctrine of the common law, as administered in the courts of our country, that when a person is charged with crime, and his case is to come before a particular grand jury,

he may be present at its organization, and present challenges either to the array or to the polls; but if he be not held, by process, to answer to an indictment, he is not thus entitled. If Mr. Blodgett does not come within the spirit of this rule (for he does not within the letter of it), his motion to challenge must be denied.

In addition to the written petition of the challenger, he has also filed in court an affidavit, which has been read to you without objection on the part of the district attorney. A synopsis of so much of this affidavit as is necessary for the court to pass upon will be stated. Blodgett swears that the district attorney, Henry S. Fitch, Esq., in the city of Atlanta, during the last session of the United States court there, informed deponent that he (the district attorney) "expected to prosecute deponent before the grand jury of this court, at this term, for the offence of perjury." Deponent says that he laid before the district attorney, by the hands of a friend, documents and papers which deponent expected to use in his defence, and informed him that he had witnesses by whom he could prove his innocence. He further says, that the district attorney distinctly promised deponent that he should be permitted, on the trial before the grand jury, to have his evidence in his defence laid before them. Further, he states that he was in attendance on this court on Thursday (7th instant), but being informed that the district attorney was then in New York sick, and that it was not probable that any action could be had on his case during the term, under advice of his counsel, he returned home, with the promise of his counsel that he would telegraph him if the district attorney arrived and he was needed. Receiving a telegram on Wednesday last (13th instant), he came down with his witnesses on the succeeding morning, and informed the district attorney (who had just arrived) that he was ready with his witnesses, when the district attorney replied, "Your case is now before the grand jury; and I will see what can be done with it." Deponent adds that he was afterwards informed by his counsel that the grand jury refused to hear his evidence.

And here the prime question presents itself, and it must be answered. Has Foster Blodgett now the right to challenge any individual member of the grand panel? True, he was not arrested and imprisoned on any criminal charge, and now brought hither by order of the court, nor is he under bail or recognizance; but because he is not in any of these constrained positions, is he any the less entitled to a grand jury of his country, legally qualified under its laws? Surely not. At the time of the empanneling of this grand jury, the district attorney for this district was in New York, confined to his bed by sickness; and had Foster Blodgett, by virtue of this statute, then demanded of the court the right to present his challenge, I should have felt it to be my duty, as a judge, to have postponed the consideration of the question until the coming of the district attorney, or until his place was filled pro tem., in pursuance of the sanction of the honorable secretary of the interior. Nor ought the unavoidable absence of the district attorney, at the time of the organization of the grand jury, to prejudice the rights of the government, and, in my judgment, he may still present challenges under the first section of the statute, or he may move the court, under the second section, to have the oath, incorporated therein, presented to the grand jurors, and the motion will be granted. But that Mr. Blodgett comes within the spirit and true intent of the rule

as to the right of challenge and the time to present challenges, I do not think there is any doubt whatever. He was informed by the prosecuting officer of the United States for this district, that he expected to prosecute him before the grand jury at this term of the court for perjury. In Breeding v. State, 11 Tex. 257, it was held that any person to be affected by the finding of the grand jury may object to their fitness. 1 Bish. Cr. Proc. § 724. From this authority, and others that might, if necessary, be cited, and on principle, it would seem that it is not essential to the right of challenge to grand jurors that the challenger should be in prison, or out on bail; for if he be warned, as Blodgett was in this case, by the district attorney for this district—the officer to whom the duty of prosecuting for crimes against the laws of the United States is confided—that he intended to prosecute him before a grand jury at a particular term of the court, the person thus notified is thereby affected.

After a most careful consideration of the proceedings before the court, I am of the opinion that Foster Blodgett had the right to present his challenges at the organization of the grand jury, and, further, that he has not waived that right, and may present them now.

In accordance with this judgment, thirteen of the panel were excepted to under the first section of the statute. And for the reasons already given in the early part of the opinion, the clerk read the oath in the second section to the jurors challenged, upon which the court said that if any one of the jurors included in the challenge believed that he came within one or more of the causes of disqualification mentioned in the first section, he could retire from the jury box. All those who had been challenged, except two, withdrew.

The district attorney then said that he desired to present a motion to the court to review and reverse its decision on this point, to-wit, that the mode adopted to try the challenges was erroneous. Leave was given, and he asked time to prepare his argument and produce authorities, which was also granted.

The following morning, the motion being put in writing, argument was had in support of it by the district attorney, and, contra, by H. R. Jackson, for Foster Blodgett.

THE COURT denied the motion, and the jurors who had retired the day preceding were discharged for the term. The panel was then filled from the talesmen, subpoenaed on the previous day, who were immediately sworn in chief.

THE COURT, on motion of the district attorney, and in pursuance of the second section of the statute, caused the oath therein to be read by the clerk to the jurors. But, the district attorney declining to have said oath administered, the grand jurors, under the instructions of the court, retired to enter upon their duties.