# Sandlin *et al.*, Administrators, *v.* Robbins *et als.*

## *Real Action in Nature of Ejectment.*

*Deeds; what fraudulent and void as to existing creditors.*—A mortgage by a father to a son, to secure a promissory note, contained the following clause : " If I fail to pay or cause to be paid said note, with interest from date, then, after my death and the death of my wife, Mary Robbins, and not till then, the said Solomon Robbins, Jr., (the son,) is authorized to seize and sell," &c. Subsequently the father and his wife make a deed of the same lands to their daughter and her husband, which recites that its consideration is, " First, that the said Kate Grayson (the daughter) and her said husband are to pay, discharge and satisfy, on or before the same becomes due and payable, a certain debt to my son    .    .    .    particularly described in a mortgage deed executed by me to my son to secure the payment thereof, which mortgage deed was executed by me about the 5th day of November, 1867.    .    .    .    .    Second, that said Kate Grayson and her said husband, also, to pay to me or my order, or for my use and benefit during my life, or to my legal representatives after my death, the balance remaining due of said sum of two thousand dollars, purchase-money, after deducting the sum by them paid and expended for the satisfaction of said mortgage debt due to my son.    Fourth, that the said Kate Grayson and husband are to suffer me and my said wife, mother of said Kate, to reside with them, as they are now doing, upon said premises, or elsewhere, as may be agreed upon by the parties, for and during the natural life of myself and my said wife, or either of us ; and the said Kate Grayson and her said husband are to reside with me and my said wife, giving to us their society and sympathy, and contributing from the proceeds of said lands whatever our necessities, comforts and conveniences may reasonably require during the life of myself and of my said wife." Grayson and wife were in possession of the premises under the deed. *Held :*

1. That where the deed to Grayson and wife was attacked for fraud, by a creditor of the grantor, the mortgage to the son was competent evidence to show fraud.

2. That both the mortgage to the son and the deed to the daughter and her husband were fraudulent and void as to existing creditors of the grantor, without regard to the intention with which they were executed, and can furnish no defense to an action of ejectment brought by a purchaser of the lands, under an execution sale, to enforce the payment of a debt arising prior to the execution of the deeds.

APPEAL from Coosa Circuit Court.

Tried before Hon. JAMES E. COBB.

The appellants, R. C. Sandlin and Martha A. Temple, as the administrators of Henry A. Temple, brought their statutory real action against the appellees, Solomon Robbins, Sr., Charles O. and Kate Grayson, to recover certain lands in Coosa county, Alabama.

The material facts may be thus stated: On the 5th of November, 1867, Solomon Robbins, Sr., executed a note to his son, Solomon Robbins, Jr., for $903, payable one day after date, and to secure its payment he executed cotemporaneously a mortgage to him on the lands in question. This mortgage provides, among other things, that if the grantor "should fail to pay or cause to be paid said note, with interest from date, then, after my death, and not until then, the said Solomon Robbins, Jr., is hereby authorized to seize and take possession of the above described lands, either by himself or his agents, or his legal representative, and after having given at least three weeks notice of the time, place and terms of sale, to sell the above described lands to the highest bidder for cash," &c. This mortgage was acknowledged in proper form and filed for record on the day of its execution.

On the 2d day of November, 1872, Solomon Robbins, Sr., and wife executed a deed conveying the same lands to his daughter, Kate Grayson, upon the following conditions: 1st. "That said Kate Grayson and her said husband are to pay, discharge and satisfy, on or before the same becomes due and payable, a certain debt due from me to my son Solomon Robbins, Jr., of the county of Smith and State of Texas, particularly described in a mortgage deed executed by me to my son, to secure the payment thereof." 2. "That said Kate Grayson and her said husband, also pay to me or my order, or for my use and benefit during my life, or to my legal representatives after my death, the balance remaining due of said sum of two thousand dollars purchase-money, after deducting the amount paid by them for the satisfaction of said mortgage debt due to my said son, Solomon Robbins, Jr., as above specified." 3. "That the said Kate Grayson and her said husband are to go into the immediate possession and enjoyment of the above described lands, and of the rents and profits thereof, as the separate estate of the said Kate Grayson." 4. "That the said Kate Grayson and husband are to suffer me and my said wife, mother of said Kate, to reside with them, as they are now living upon said premises, or elsewhere as may be agreed upon by the parties, for and during the natural life of myself and my said wife, or either

of us, and the said Kate and her said husband are to reside with me and my said wife, giving us their society, sympathy, and contributing from the proceeds of said lands whatever our necessities, comforts, or conveniences may reasonably require during the life of myself and of my said wife." *Lastly*, "that the title to the above and hereby granted lands and premises, shall be subject to the terms and conditions hereinabove described and set forth; rest in my said daughter Kate Grayson as her separate property under the provisions of the laws of the State of Alabama now in force, commonly called the 'woman's law.'" This deed was filed for record, in the proper office, on the 14th day of April, 1873. It was shown that before this deed was made Solomon Robbins, Sr., controlled and managed the property, and that after its execution Grayson managed the land, paying the taxes thereon and claiming it as the property of his wife.

On the 16th day of April, 1873, H. A. Temple, the intestate of appellants, recovered a judgment against Solomon Robbins, Sr., "on a demand which arose prior to the late war." Execution was issued on this judgment on the 30th day of the same month, and on the 22d of May following was levied on the lands in question. The property was advertised for sale under the execution, but the sale was suspended by the appellants as administrators of Temple, he having died after the rendition of the judgment.

On June 9th, 1874, a *scire facias* was issued and served on Solomon Robbins, Sr., and ten days later an execution issued on the judgment, in the name of the administrators, and was levied on the property sued for, and at a sale made under this levy, on the 7th of September, 1874, the appellants, as administrators, purchased the premises and received the sheriff's deed therefor. And on this title the defendants brought this action, to recover the lands, against Solomon Robbins, Sr., Charles O. and Kate Grayson. At the time of the sheriff sale and of the service of the process in this suit, Grayson and wife were in possession of the land, and Solomon Robbins and wife lived with them.

On the trial the plaintiffs proved the rendition of the judgment in favor of their intestate, the issuance of execution thereon, and a levy on and sale of the property thereunder, and a purchase by them in their representative capacities as shown above, and rested. The defendants, Grayson and wife, then offered in evidence the deed of Solomon Robbins, Sr., dated November 2, 1872. To this deed the plaintiffs objected: 1. Because it showed on its face that it was fraudulent and void. 2. Because it was not recorded within three months from its date, and was void as to judgment creditors. The

court overruled the objections, admitted the deed, and the plaintiffs excepted. The plaintiffs then offered in evidence the mortgage to Solomon Robbins, Jr., referred to in the deed to Grayson and wife, "for the purpose of showing that the deed was fraudulent and void." The defendants objected to the introduction of said mortgage, the court sustained the objections and excluded the mortgage, and the plaintiffs excepted. The plaintiffs then offered said mortgage in connection with the deed to Grayson and wife, "for the purpose of showing that it was part of the same transaction, and that the two together were fraudulent on their face and void as to creditors." The defendants objected, the court sustained the objections, and the plaintiffs excepted.

The plaintiffs then offered said mortgage, in connection with the deed to Grayson and wife, "for the purpose of showing the fraudulent intent of the grantor and grantees." The defendants objected, the court sustained the objection, and the plaintiffs excepted.

The defendants then proved by Solomon Robbins, Sr., "that at the time he made the deed to Grayson and wife, he justly owed his son the sum therein named, as assumed by Grayson and wife. The plaintiffs objected to this evidence, the court overruled the objections, and the plaintiffs excepted. Upon this evidence the court charged the jury, "that the deed from Solomon Robbins and wife to Charles O. and Kate Grayson was not void upon its face, and unless they believed, from the evidence, that the deed was made with the intention of hindering, delaying, or defrauding his creditors, and that intention was participated in by the grantees, that the deed was not void as to creditors." To this charge the plaintiff excepted.

The plaintiffs then asked the court to charge the jury "that if they believed, from the evidence, that the deed conveyed all the property of Solomon Robbins, the effect of the deed was to hinder, delay and defraud creditors, and the grantors and grantees therein knew this, then the deed was fraudulent and void as to such creditors." This charge the court refused to give, and the plaintiffs excepted.

There was a verdict and judgment for the defendants, and the plaintiffs bring the case here by appeal.

LEWIS E. PARSONS, JR., for appellants.—The court should have excluded the deed to Grayson and wife; it was void on its face, and the objection to its admission compelled the court to pass on its validity.—1 S. & P. 139; 26 Ala. 172; 18 Ala. 741; 9 Port. 39. This deed was fraudulent in law; the grantor reserved to himself a beneficial interest, and,

taken as a whole, it shows an intention to hinder, delay and defraud creditors.—See 18 Ala. 741.   While it must be conceded that a debtor, owing beyond his ability to pay, may convey his property to one or more of his creditors, in payment of debts due them, to the exclusion of other creditors, when the known effect of the deed will cause loss to such creditors; when this is done, it must be done in good faith, and if any benefit is reserved to the grantor, or if the sale is conditional the sale is avoided, and when the intent to hinder, delay and defraud creditors appears on the face of the deed in any manner, it is void in law.—See, especially on this point, *Richards v. Hazard*, 1 Stew. & Port. 139.   The deed referred to the mortgage to Solomon Robbins, Jr., and that mortgage became part of the deed.   That mortgage was void on its face, and held the grantees in the deed to notice of its invalidity, and would not protect them in their purchase even if the purchase was made in good faith.—18 Ala. 741.

BULGER & BULGER, and BRAGG & THORINGTON, *contra*.—No deed can be pronounced fraudulent on its face, if its terms and stipulations are by possibility compatible with good faith, and have upon their face the essential elements of a legal contract.—Bump on Fraud. Con. 70.   There was no error in the refusal of the court to admit the mortgage to Solomon Robbins, Jr.   It was wholly irrelevant to any of the issues joined in this case.   None of the parties to this suit set up any claim under the mortgage, and the consideration of the deed to the Grayson's was not that that the mortgage should be paid, but that the debt to Robbins, Jr., should be paid. That mortgage may have been void; that would be wholly immaterial, for the proof shows that the debt, to secure which the mortgage was given, is good and valid.   Its introduction could throw no light on the intent of the parties to the deed.   It was executed five years prior to the date of the deed.   It would be absurd to say that deeds, with such intervals between them, could constitute one and the same transaction.   It is permissible, when a deed is attacked for fraud, for proof to be made of other deeds *made about the same time.* Bump on Fraud. Con. 544–45.   The deed to the Graysons contained no secret reservations.   The only reservations are clear and open, and amount to nothing more than the reservation of a life estate, and that would not render the deed void.—Bump. on Fraud. Con. 211, 212 ; *Adams v. Broughton*, 13 Ala. 731.   The utmost the appellants could do, would be to vacate the deed by showing actual fraud, or by proper proceedings to subject the life estate of the grantors.—*Low v. Carter*, 2 N. H. 433.

(31)

STONE, J.—The present record does not inform us positively that Solomon Robbins, Sr., was insolvent, or unable to pay all his debts, when he executed the conveyance to Mrs. Grayson, his daughter, which this suit seeks to override as fraudulent. His financial condition, at that time, was an important factor in the solution of the issue before the jury. Robbins himself testified that the debt to Temple, which was reduced to judgment, and under which the lands were sold and bought by plaintiffs—the title under which they claim in this case—was contracted before the war. The war commenced in 1861. The conveyance to Mrs. Grayson was in November, 1872, eleven years afterwards. Temple's judgment was recovered in April, 1873—five months after the conveyance, and probably after Temple's suit had been instituted. The deed sets forth the consideration to be paid, as follows: " First, that the said Kate Grayson and her said husband are to pay, discharge and satisfy, on or before the same becomes due and payable, a certain debt due from me to my son, Solomon Robbins, Jr.,    *    *    particularly described in a mortgage deed executed by me to my son, to secure the payment thereof, which mortgage deed was executed by me about the fifth day of November, 1867, and is recorded in the office of the judge of probate of said county of Coosa, book M, page 110. Second, that said Kate Grayson and her said husband are to pay to me, or my order, or for my use and benefit during my life, or to my legal representatives after my death, the balance remaining due of said sum of two thousand dollars, purchase money, after deducting [the sum] by them paid and expended for the satisfaction of said mortgage debt due to my said son Solomon Robbins, Jr., as above specified." The third clause provided that Mrs. Grayson and her husband should go into immediate possession of the premises. " Fourth, that the said Kate Grayson and husband are to suffer me and my said wife, mother of said Kate, to reside with them as they are now doing, upon said premises, or elsewhere, as may be agreed upon by the parties, for and during the natural life of myself and my said wife, or either of us ; and the said Kate and her said husband are to reside with me and my said wife, giving to us their society, sympathy, and contributing from the proceeds of said lands whatever our necessities, comforts and conveniences may reasonably require, during the life of myself and of my said wife. Lastly, that the title to the above and hereby granted lands and premises, shall be subject to the terms and conditions hereinabove described and set forth." It will be observed that this deed does not describe the debt to Solomon Robbins, Jr., its amount, or

when and how payable. It refers to it simply as a debt particularly described in a certain mortgage. Still, by the terms of her title, Mrs. Grayson and her husband were bound to pay, discharge and satisfy that debt, on or before the same becomes due and payable ; and it was made a charge on the lands in her hands. The present suit attacked Mrs. Grayson's deed for fraud. That deed certainly contained some unusual stipulations, and an understanding of the entire contract was necessary to a proper decision of the question of fraud *vel non*. The debt and mortgage to Solomon Robbins, Jr., were important elements in this inquiry, and the latter should have been allowed to go to the jury, as a material fact for their consideration. The Circuit Court erred in not allowing the mortgage to go to the jury.

The mortgage to Solomon Robbins, Jr., as we have said, was executed in November, 1867, more than six years after the creation of the debt to Temple, according to the testimony of Solomon Robbins, Sr. It is made to secure a note, described in the mortgage as bearing even date with the mortgage, due one day after date, for the sum of nine hundred and three dollars. The mortgage conveys the four hundred acres of land in controversy in this suit, and contains a power of sale in the following language : "If I fail to pay or cause to be paid said note, with interest from date, then after my death and the death of my wife Mary Robbins, and not until then, the said Solomon Robbins, Jr., is hereby authorized to seize and take possession of the above described lands, either by himself or his agent, or his legal representative," and after giving three weeks notice of time, place and terms of sale, to sell the lands for cash, and pay the mortgage debt with interest. As we have shown above, the payment of this debt according to the terms of the mortgage, was one of the stipulations of the contract, by which Mrs. Grayson purchased the lands. Reading the contract as shown by the two conveyances, no part of the purchase money was to be paid until after the death of both the elder Robbins and his wife ; while, under the mortgage, the mortgagee was not allowed to take possession of the property under the mortgage, or to collect his claim by sale, until those two events should happen. And under the conveyance to Mrs. Grayson, the grantor and his wife reserved the privilege of residing on said land, and were to receive from the proceeds of said lands whatever their necessities, comforts and conveniences might require, during the life of the grantor and of his wife. It is manifest that under these conveyances, Robbins secured from the products of said land a support for himself and wife during the term of each of their

lives, no matter how long they might severally live ; and, under the deed to her, Mrs. Grayson secured to herself, during that uncertain and probably long time, the possession, use and enjoyment of the lands, subject to the charge above, without being compellable to pay any thing therefor. Is a conveyance of this kind valid against the claims of creditors ?

Good faith requires that debtors shall honestly apply their property—that which is in excess of what the law exempts to them—to the payment of their debts. Beyond the legal exemptions, human ingenuity can not devise a plan by which a debtor can secure to himself the right to property, or a valuable interest therein, which creditors can not reach and condemn. This is common law, independent of statutory enactments.—*Rugely & Harrison v. Robinson*, 10 Ala. 702.

In *Stokes v. Jones*, 18 Ala. 734, a conveyance of land was made by a father to his son, containing a clause of warranty, and the condition that the grantor and his wife, in consideration of the conveyance, were to live with and be supported by the grantees." This court said, " The second charge of the Circuit Court was, that if the deed of the father, under which the plaintiff claims, was fraudulent as to the creditors of the former, he could not stipulate in the deed for any benefit to himself. If it was intended to say that such a stipulation or reservation would make the deed void, it was right. A debtor has no right to make such a reservation at the expense of his creditors, and with intent to defraud them." It will be observed that, in thus stating the principle, knowledge in the grantee of the grantor's fraudulent intent, is not stated to be essential to the application of the principle. In Smith's Leading Cases, 7th ed., vol. 1, part 1, discussing the principles of Twyne's case, and the numerous adjudications in the mother country and in this on the subject of fraudulent conveyances, it is asserted that one controlling reason why retention of possession by the grantor, contrary to the stipulations of the deed, is *prima facie* fraudulent, is the presumption it raises of secret trust, and benefit reserved, or secured to the grantor. See particularly pages 46, 48, 53. And speaking on this subject the court, in the great case of *Curtis v. Leavitt*, 15 N. Y. 9–132, say, it is the duty of a debtor to " reserve nothing to himself, but give all to his creditors." Bump on Fraud. Con. 2d ed. 208, speaking of the Stat. 3, Hen. 7, ch. 4, which in substance constitutes § 2120, Code of 1876, says, "It is not directed against trusts made with fraudulent intent, but against trusts themselves. There is not one word about intent, or object, or purpose, or excluding, injuring, or delaying creditors. The effect of the

trust is not a subject for consideration. Its mere existence avoids the transfer, and destroys the title as against creditors existing or subsequent. A conveyance by the owner of property to another, in trust for himself, is in effect a conveyance to himself, and such a measure can never be necessary for any legal or honest purpose. He who, having the full title, desires to retain the control and use of his property, and yet transfers it to another, can, in the general course of human actions, have but one motive for that measure, and that motive must be to defeat or elude the claims of others. Hence, all conveyances to the use of the grantor, are fraudulent and null against creditors, and others having just claims upon the grantor, or upon the property conveyed. In all the refinements of uses and trusts, in the midst of multiplied distinctions between legal and equitable interests which have abounded in the progress of Anglican jurisprudence, this principle has never been doubted, and the mockery of a transfer by a debtor of his property, to be held for the use of the debtor, has never been allowed to defeat the rights or remedies of creditors." See, also, same book, 39 and 46; *Stokes v. Jones*, 21 Ala. 731; *Reynolds v. Welch*, 47 Ala. 200; *Wiley, Banks & Co. v. Knight*, 27 Ala. 336; *Ticknor v. Wiswall*, 8 Ala. 305; *Patterson v. Campbell*, ib. 933; *Montgomery v. Kirksey*, 26 Ala. 172; *Constantine v. Twelves*, 29 Ala. 606; *Reynolds v. Crook*, 31 Ala. 634; *King v. Kenan*, 39 Ala. 63; *Hall v. Heyden*, 41 Ala. 242; *Richards v. Hazzard*, 1 S. & P. 139; *Swift v. Fitzhugh*, 9 Por. 39; *Gazzam v. Poyntz*, 4 Ala. 374; *West v. Snodgrass*, 17 Ala. 549; *Cummings v. McCullough*, 5 Ala. 324.

Section 2120 of the Code of 1876, and the statute of 3 Henry, 7, speak alone of goods, chattels and things in action. It is a common law doctrine, however, and is applicable alike to realty. There never was a time when a debtor could convey his property directly, or in secret trust, for his own benefit, or for the use of his family, and thereby defeat his creditors of their lawful demands.—*Huggins v. Perrine*, 30 Ala. 396.

In the present case, there is no secret trust. Both the mortgage to the son and the conveyance to the daughter, express on their face that they secure a valuable interest to the grantor. They are both fraudulent and void against the claim and title of appellants, if the debt on which the judgment was recovered was contracted before they were severally executed; and this, independent of any intent with which the conveyances were executed. There was, on this question, but a single inquiry for the jury, namely: Whether the debt, on which Temple recovered his judgment, was older than the conveyances? If it was, the law pronounces

them null and void, so far as that claim is concerned; and the jury should have been so instructed.

Reversed and remanded.