JOSEPH H. WOOD v. JOSEPH CHAMBERS.

Where on a question of fraud, the Court has, at the request of one party, called the attention of the jury to certain parts of the testimony as proper to be considered by them in determining their verdict, the judgment will not be reversed because the Court, at the request of the other party, (who obtained the verdict) afterwards called the attention of the jury to certain other parts of the testimony in similar terms; but such mode of calling the attention of the jury, at the request of either party, to particular circumstances in proof, is improper.

On an issue whether a conveyance was made to hinder, delay or defraud creditors, it was held not to be proper to instruct the jury, "that the payment of a valuable and adequate consideration for the land, is a circumstance that the jury should consider in determining the good faith and fair dealing of the purchaser;" but such instruction was held not to be good ground of reversal, where the Court, in another charge, previously given, had clearly and distinctly presented the true questions for the jury to decide, and the evidence upon which they must decide, in proper application to the facts of the case; the whole charge not being unfavorable to the appellant.

In like case the following instruction was held to have been improper, but for like cause the Court refused to reverse the judgment: That the defendant's (purchaser's) causing an investigation to be made as to the right of the Raileys (defendant's vendors) to convey a good title, is another circumstance for the jury to consider in determining the good faith and fair dealing of the defendant in the transaction.

The conveyance of the homestead for a valuable consideration cannot be deemed

a conveyance to defraud creditors, from whose claims there is a permanent, enduring exemption, placed beyond the power even of legislative authority.

Appeal from Washington. Tried below before the Hon. R. E. B. Baylor.

Action of trespass to try title to four hundred acres of land, by appellant against appellee, commenced in Austin county, and removed by change of venue to Washington. Plaintiff claimed by purchase at Sheriff's sale under execution on judgments, dated April 18th, 1851, and November 12th, 1851, recovered by plaintiff against Charles Railey in Austin county, in suits commenced on the 6th of June, 1849. One judgment was for $928, and the other for $721 60.

Defendant claimed by deed from Charles Railey to James A. Railey for two of the four hundred acres in controversy, dated Oct. 6th, 1849, purporting to be in consideration of $800 paid by said James; and from said James to defendant, dated February 12th, 1851, purporting to be in consideration of $1500; and by deed from Charles Railey, and Jane his wife, to defendant, for the other two hundred acres, described as their present residence, purporting to be in consideration of $2000 paid by said defendant, dated also February 12th, 1851.

Plaintiff alleged that these deeds were made to hinder, delay and defraud the creditors of said Charles Railey, of which defendant had notice; and this was the issue tried. The nature of the evidence introduced appears from the instructions to the jury, and as its sufficiency to sustain the verdict was not discussed, it is omitted. The plaintiff requested the Court to give the following instructions, and they were given accordingly:—

1st. That a purchase of land, with the knowledge that the vendor is selling to hinder, delay or defraud his creditors, although for a valuable consideration, is void as against creditors.

2d. If the jury believe, from the evidence adduced, that Charles Railey executed a deed to his son, James Railey, on the 6th of Oct. 1849, for 200 acres of the land in controversy, with the intent to hinder, delay and defraud his creditors, and if they further believe from the evidence adduced, that Chambers knew at the time he purchased, that James Railey was too poor to make such a purchase, and that the conveyance from Charles Railey to his son, James Railey, was a combination between them to hinder, delay or defraud Charles Railey's creditors, then

they will find said two hundred acres of land, which James Railey conveyed to Chambers, for the plaintiff.

3d. If the jury believe, from the evidence adduced, that Jane Railey was aiding and assisting her husband, Charles Railey, to place their remaining 200 acres of land out of the reach of his creditors, with the intent to defraud them by their deed to Chambers, on the 12th February, 1851, and if they believe, from the evidence, that Chambers knew of this intention, then said deed is void as against Charles Railey's creditors, unless Charles and Jane Railey occupied said 200 acres of land as their homestead at the time of said sale.

4th. Fraud may be proved by circumstantial evidence, and the jury must look to all the circumstances in proof connected with the transaction.

5th. If the jury believe, from the evidence, that Charles Railey and Jane Railey were indebted and in embarrassed circumstances, it is one fact that they may consider in ascertaining the fraud. The pendency of the suits of Wood v. Chambers, in the District Court of Austin county, is another fact to be considered by the jury, if they believe said suits were pending when said deeds were made.

If the jury believe that Charles Railey said that he would not pay the debt of Wood, and Chambers knew it, this is another fact that they may consider in determining upon the question of fraud.

The relationship between the Raileys is another circumstance that may be considered in determining upon the fraud.

If the jury believe, from the evidence, that James Railey was not able to pay his father for the 200 acres of the land purchased by him, this is another circumstance that may be considered by the jury to ascertain if there be fraud in any of the transactions.

If the jury believe, from the evidence, that the purchase money for the whole four hundred acres of land was paid by Chambers to Chas. Railey, and no part of it was paid to James Railey, this is another circumstance that may be considered by the jury to ascertain the question of fraud.

And the jury must consider the whole testimony in the case, in connection with the badges of fraud, and those badges of fraud, if they exist, must have been known by Chambers at the time he purchased the land, to affect his title.

If the jury find only 200 acres of the land in controversy for plaintiff, they will state which 200 acres they find; the 200 acres

in the deed from James Railey to Chambers, or the 200 acres in the deed from Charles and Jane Railey to Chambers.

The fact of the indebtedness of Charles Railey to Jos. H. Wood, having been determined in the suits between them, that fact cannot be inquired into or questioned in this suit, but the judgments are to be considered as just and meritorious demands in favor of Joseph H. Wood.

Defendant requested the following instructions, which were also given:—

1st. That this suit being an action of trespass to try title, the plaintiff must recover on the strength of his own title, and not on the weakness of his adversary's.

2d. Mere indebtedness on the part of the vendor at the time of the sale is not of itself proof of fraud, or of fraudulent intent in making the sale.

3d. That the deeds from Charles, Jane and James A. Railey to defendant Chambers, *prima facie* convey a good title, and in order to set aside and annul said deeds, the plaintiff must prove that there was fraud on the part of the Raileys, and that Chambers was a party to the fraud, or had full knowledge of it at the time he made the purchase of the land.

4th. That fraud is never presumed, but must be actually proved, or be a conclusion from facts that will not admit of any other conclusion, consistent with fair dealing, and, until such proof is made, every presumption is in favor of the fairness of the transaction.

5th. That if the jury believe, from the evidence, that Chambers was a purchaser for a valuable consideration, and *bona fide*, although the Raileys, his vendors, might have intended to defraud, hinder, delay and defeat creditors, and plaintiff, as one of them, by the sale and conveyance of the land in controversy; yet, if Chambers was not knowing to the fraud, or was not a party to the fraud, he cannot be prejudiced nor his title affected by the fraud or fraudulent intent of the Raileys; but, under such circumstances, Chambers occupies the position of an innocent purchaser, whom the law protects and favors as much as a creditor, and the jury in that event will find for the defendant.

6th. That if the jury believe, from the evidence, that the two hundred acres, sold to defendant by Charles and Jane Railey, was their homestead at the time of the sale to Chambers, it was not subject to sale under Wood's executions, and that a purchaser at the sale under said executions acquired no title.

7th. That the payment of a valuable and adequate consideration for the land is a circumstance that the jury should consider, in determining the good faith and fair dealing of the purchaser.

8th. That the defendant's causing an investigation to be made as to the right of the Raileys to convey a good title, is another circumstance for the jury to consider in determining the good faith and fair dealing of the defendant in the transaction.

9th. That a suit for slaves or specific property alone, without a prayer for damages, does not constitute the plaintiff in such suit a creditor of the defendant.

10th. That an innocent purchaser for a valuable consideration from a fraudulent vendee takes a good title, and although Charles Railey, on the 6th Oct. 1849, conveyed the 200 acres of land to James Railey, with the intention to hinder, delay and defraud creditors, still, if Chambers purchased without knowledge of such fraudulent intent, and paid a valuable consideration therefor, the title of defendant, Chambers, is not affected by the fraud.

Verdict and judgment for defendant. Motion for new trial overruled. There had been a verdict before for the defendant, and a new trial granted.

*G. W. Horton and J. E. Shepard*, for appellant. I. It is easily perceived that the 7th and 8th charges, given at defendant's request, were highly improper. The 7th rendered nugatory the 1st charge given for the plaintiff. This 1st charge is certainly good law, and it follows that the 7th charge given for the defendant is not law. Besides, it was calculated to mislead the jury. It is a very common error amongst those who have not a very fair knowledge of the law, to believe that where a party pays full value for any article of property, he thereby obtains a good and valid title to it; and it may readily be supposed that the jury took this charge as an intimation from the Court that if they believed that Chambers paid a full price for the land, they must consider his title good to the land. The 8th charge is equally objectionable as being calculated to mislead the jury. There is no more common an error amongst our people at large, than the opinion, that if there is nothing of record against a man's title, a purchaser from him gets a good and legal title, independent of all other claims; and there is every reason to suppose that the jury took this 8th charge as tantamount to a declaration of the Court, that if Chambers

caused an examination of the records to be made and there was nothing found in the records against the title of the Raileys, then Chambers' purchase gave him a good title, especially when they (the jury) connected this 8th charge with the 7th charge. With these two charges the jury were easily led into the belief that Chambers, under any circumstances that might have been proved before them, got a good title.

II. We do not think it necessary to enter into a lengthy argument on the testimony offered in behalf of the plaintiff below, to sustain the allegation of fraud in the conveyance by the Raileys to Chambers, and of the latter's knowledge and complicity therein.

III. The question as to the effect of a fraudulent sale of the homestead, we believe, has never been discussed or decided in this Court. But it is rule of law, that fraud vitiates everything; and we cannot see any good reason why this rule should not be applied to the sale of a homestead which has been fraudulently made.

*N. Holland*, for appellee. Proof, no other creditor except plaintiff, and debt of plaintiff, a gambling debt; the only consideration for the note, &c., given by Railey to Wood, being checks at a faro bank. But what proof is there that Chambers, the defendant, was a party to the fraud or had knowledge of the fraud between the Raileys, if any existed, which is not by any means conclusively established? Having the investigation of title made by witness Bradbury previous to the purchase is a strong circumstance tending to show good faith in Chambers the defendant; and that he gave a full, fair and valuable consideration is abundantly proved, and this itself is another circumstance tending to show good faith on his part also; for ordinarily when men assume risks, they expect to realize corresponding profit, either on account of the present cheapness of the bargain, or the pregnant prospect of a speedy increase in the value of the thing purchased. Therefore we conclude there was no error in the 7th and 8th charges of the Court given to the jury, when it is considered that the Court was so profuse in his enumeration of circumstances of fraud in the instructions given for plaintiff.

WHEELER, J. The seventh and eighth instructions, complained of, are objectionable as calling the minds of the jury to particular parts of the evidence, and giving those parts undue

Wood v. Chambers.

prominence, instead of leaving the question of intention to be decided by them in view of all the circumstances of the case. The example of this objectionable mode of asking charges, however, had been set by the plaintiff in the instructions asked by him. His instructions, repeating in detail portions of the evidence, having been given, it was natural that the defendant should seek to countervail their effect by bringing prominently to view other portions, which he deemed favorable to himself.

But a graver objection to these charges is their tendency to confound ideas which ought to be kept distinct. To render a conveyance valid under the statute of frauds, (Hart. Dig. Art. 1452,) it is not enough that it is for a valuable consideration. It must also be *bona fide:* for if it in fact be made to defraud or defeat creditors, it will be void although there may be a valuable, and an adequate consideration. (Edrington v. Rogers, 15 Tex. R. 188; Story's Eq. Sec. 369.) In the seventh charge this principle is lost sight of. Because an adequate consideration was paid, it does not follow that the purchaser did not know that his vendor made the conveyance to defeat and defraud his creditors. So of the eighth instruction, the examination in the Clerk's office to see if there was any lien or incumbrance upon the land proves that the defendant intended to get a good and indefeasable title: but not that he did not know that he would thereby enable his vendor to defraud his creditors. That is a *non sequitur*. The question was one of good faith, depending upon actual knowledge and intention on the part of the defendant and his vendor; and that question the jury were to decide upon a view of all the evidence before them. If they had not been so informed distinctly in other portions of the charge, and the objectionable instructions stood alone, unexplained by other instructions, they would certainly require a reversal of the judgment. But the true questions for the jury to decide, and the evidence upon which they must decide, were clearly and distinctly presented, and in their application expressly to the facts of the case, in the instructions given at the instance of the plaintiff. These instructions were so clear, express and positive; and were enforced in so many forms of expression, that it is scarcely possible their effect could have been impaired, or that the jury were misled by the instructions complained of. Any injurious effect which the latter might have had, standing alone, must have been effectually countervailed by the former. And we have heretofore decided that it is not sufficient to reverse a judgment, that

the charge to the jury embraces erroneous propositions, if their effect is removed by other portions of the charge, and upon the whole the charge was not unfavorable to the party seeking the reversal; (2 Tex. R. 284;) as in the present case we do not deem that it was.

As to the two hundred acres which were within the homestead exemption, it is clear the plaintiff can have no right of action. The English doctrine, it is said, is, that in order to make even a voluntary conveyance void as to creditors, existing or subsequent, it is indispensable that it should transfer property which would be liable to be taken in execution for the payment of debts. (Story, Eq. Sec. 367.) Clearly the conveyance of the homestead for a valuable consideration, cannot be deemed a conveyance to defraud creditors, from whose claims there is a permanent, enduring exemption, placed beyond the power even of the legislative authority. And as to the other two hundred acres we are of opinion the verdict of the jury was uninfluenced by any error in the charge of the Court; and the question being one of fact peculiarly within the province of the jury, that their verdict was not so contrary to evidence as to warrant the reversal of the judgment on that ground. On the whole we are of opinion therefore that it be affirmed.

Judgment affirmed.