## EDMONSON & WINN *v.* M. B. MEACHAM.

1. CONVEYANCES — STATUTE OF FRAUDS.— Purchases with the debtors money in the name of a third person, are not embraced in terms by the statute of frauds. Gowing v. Rich, 1 Ired., 553. The statute only operates upon conveyances made by the fraudulent debtor. Lamplugh v. Lamplugh, 1 Pr. Will, 111.

2. SAME — RULE AT COMMON LAW.— It is a maxim in the common law that fraud vitiates every transaction that it taints. Essentially the same principles exist at common law as are declared by the statutes. The fundamental principle is, that the insolvent debtor cannot purchase property for his wife and children so that they may hold it in defiance of his creditors. Such purchases of land, though not within the letter and terms of the statute of frauds, are nevertheless condemned by the common law, and the creditor may pursue the debtor's fund into the property and subject that.

3. SAME — ADVANCES BY HUSBAND — WHEN VALID.— A debtor may innocently subtract from his resources such means as may be reasonably necessary for the support of his family and the education of his children, which his creditor could not pursue.

4. SAME — HOMESTEAD EXEMPTION.— A fraudulent conveyance does not defeat the homestead. Wood v. Chambers, 20 Texas, 247, The title of the exemptionist is dependent on the facts " of his being the head of a family and residing upon the premises." When the occupancy ceases, the right to exemption is lost, and the property is liable to seizure and sale by judgment creditors or by attachment. Lessly v. Phipps, 49 Miss., 790.

APPEAL from the Chancery Court of De Soto County. Hon. J. F. SIMMONDS, Chancellor.

EJmondson and Wynn filed their bill in the chancery court of De Soto county, alleging that at the August term, 1867, of the circuit court of De Soto county, they obtained a judgment against H. B. Meacham, for the sum of $4,066 and costs, that a *fi. fa.* was issued upon said judgment, directed to the sheriff of De Soto county, and returned by him *nulla bona.* That on the 9th day of April, 1866, Meacham had purchased and paid for out of his own means, from one Fitzgerald, a valuable tract of land in De Soto county, containing 400 acres. That Meacham took the deed to the tract of land from Fitzgerald to his wife and children. That Meacham held said deed and did not permit the same to go to record until just before complainants obtained the judgment. That at the time the deed was made to the land by Fitzgerald, to the wife and children of Meacham, Meacham was insolvent, and the deed was made to hinder, delay and defraud creditors, and that complainant was a creditor at the time the deed was made, and the same was void as to complainants.

At the August term, 1858, of the chancery court, a decree was pronounced by the chancellor, declaring that the deed conveying the land from Fitzgerald to Mrs. Meacham and children, was made for the purpose of hindering, delaying and defrauding the creditors of H. B. Meacham, and especially complainants, and was void as to them; and the decree directed the clerk, as the commissioner of the court, to expose said land at public sale, and sell the same to pay complainants' judgment. Said commissioner, after advertising the land, sold the same on the 1st day of February, 1869, and one Wicks became the purchaser, for the sum of $3,201. A decree was pronounced confirming said sale, and appropriating the funds; but on application of Fleming, Litus and other creditors, who had also filed bills against Meacham, claiming a priority in said fund, the decree was vacated, and the bills of all the creditors against Meacham were consolidated.

On the 6th of February, 1872, Meacham filed his application in writing, stating that he was the head of a family, and that he resided upon the land with his wife and children, and resided thereon from the date of said deed until January, 1871, when he was put out of possession of the land by Wicks, the purchaser at the sale; and claimed that he was entitled to $1,500 of the purchase money of the land, as his homestead exemption, and asks the court to direct that the same be paid to him.

The proof shows that Meacham, with his family, was residing upon the land, as their home, at the time the land was sold by the commissioner.

The proof further shows that at the time the conveyance was made by Fitzgerald to the wife and children of Meacham, that Meacham was the owner of a house and lot in Senatobia, and also the owner of another quarter section of land in De Soto county, Miss. That after the date of the deed from Fitzgerald of the land to his wife and children, Meacham conveyed said quarter section, and house and lot, in trust, and the same was sold after the sale of the Fitzgerald land by the commissioner.

The court pronounced a decree giving to Meacham $1,500 as his homestead exemption, out of the proceeds of the sale of the land made by the commissioner under a former decree of the court, to pay the debts referred to in said decree, which is the decree complained of and appealed from.

*Sam. Powell,* for appellants, contended:

1. That the homestead exemption law is to give to the head of a family certain property exempt from execution, as a means of support for his family. That it does not give to a party property to which he has neither a legal or equitable right.

2. That a conveyance made to defraud creditors by the express terms of the statute is void only as to creditors, but is good and binding between the parties, their heirs and representatives. Winn v. Barnett, 30 Miss., 653.

3. That a debtor who has made a fraudulent conveyance to de-

feat or delay his creditors cannot enforce against his confederates any stipulation for his benefit, or recover back according to their agreement any property which the debtor has thus gotten. The court will not interfere in his behalf. Watt v. Congor, 13 S. & M., 412.

*Walter & Scruggs*, for appellee, contended :

1. That as to the exempt property, the debtor is considered to be without creditors, and he may dispose of it as though there were no creditors, and cited Smith v. Allen, 39 Miss., 469 ; Whitley v. Stevenson, 38 Miss., 115 ; Hardin v. Osborne, 43 Miss., 536. The right to enjoy the benefit of the exemption does not in any manner depend upon the question as to the solvency or insolvency of the party, or whether he has made a fraudulent transfer of other property to hinder or delay his creditors. Sears v. Hanks, 14 Ohio St., 298 ; Murphy v. Crouch, 24 Wis., 365 ; Crane v. Waggoner, 33 Ind., 83 ; Shaw v. Davis, 55 Barb., 389 ; Castle v. Parmer, 6 Allen, 401. That a husband may sell and convey the homestead and thus enable him to procure another, yet he cannot *waive it* in favor of a judgment creditor. Denny v. White, 2 Cold., 284, and permit a levy and sale of the property by execution. Ally v. Bay., 9 Iowa., 509, and if waived and sold, the wife can recover from the purchaser. Welch v. Rice, 31 Texas, 688 ; Quertier v. Hille, 21 La. (Ann.), 429 ; Swan v. Stephens, 99 Mass., 7 ; Hoskins v. Litchfield, 31 Ills., 137.

2. That it was the duty of a court of equity to protect a husband in his exemption. If he failed to save his exemption out of the property, then the court should do so out of the sale money. Hardin v. Osborne, 43 Miss. 532.

SIMRALL, J., delivered the opinion of the court :

The decree of the chancery court found that the moneys of the husband Meacham, paid for the land, and that the conveyance was made directly by Fitzgerald to Meacham's wife and children ; and that this transaction was in fraud of his creditors.

After a sale had been made under the decree, the court directed, upon Meacham's petition, that $1,500, part of the sale money, should be paid over to him in lieu of his homestead.

That decree is before us for review.    Waiving all questions as to the time and mode of the application, we proceed to the inquiry whether H. B. Meacham had an exemption in the land.

The conveyance made to the wife and children not having been made by Meacham, the debtor is not within the statute of 13 Elizabeth, or our statute, which is essentially a transcript, on this subject.   Code, 1857, p. —, art. —.    Purchases with the debtor's money, in the name of a third person, are not embraced by the statute of frauds in terms.    Crozier v. Young, 3 Monroe Rep., 157 ; Gowing v. Rich, 1 Ire. Law, 553.    The statute only operates on *ccnveyances* made by the fraudulent debtor.    Lamplugh v. Lamplugh, 1 Pr. Williams, 111.    It is a maxim of the common law that fraud vitiates every transaction which it taints.    Essentially the same principles exist at common law, as are declared by the statutes.

Prior to the enactment of the statute, but few cases had been decided; but these principles had been adopted into the common law ; that a fraudulent conveyance was void, and the property might be taken on execution. Rolle's Abr., title Covin.    After the death of the debtor the fraudulent grantee would be charged as executor *de son tort.*    (Ibid.)    The statutes rest upon the foundation of these principles, and are but an elaboration of them.

A debtor may innocently subtract from his resources, such means as may be reasonably necessary for the support of his family.    His creditors, therefore, can not pursue and reach the money of the husband and father paid for such necessary purposes as the maintenance of the family and education of the children.    But subject to that right, the debtor must devote his property and means to his creditors.    If the husband takes money, which ought to pay his debts, and invests in the purchase of real estate, or other property, for wife and children, the transaction may be

fraudulent or not, as the husband may be indebted or not, and then by a comparison of his debts with the resources retained by him. If he was insolvent at the time of the purchase, the evidence is overwhelming and conclusive, that the motive was to make a gift at the expense of creditors, and that the intent was to withdraw his means from their reach.

There has been difference, in the courts, as to the precise ground and principle upon which equity proceeds to reach and subject the land to creditors. This much is concurred in — that if the circumstances clearly indicate that the provision for the wife and children was contrived and intended to evade creditors, and their demands, then the debtor shall stand, for the purpose of satisfying creditors, in the same relation to the property, as though the conveyance had been made to himself. If the conveyance to wife and children was not made with the honest and laudable motive of making a reasonable advancement, but with the design of securing the property to the debtor's use, the Chancellor may treat the estate as held in trust for the debtor. Fletcher v. Sidley, 2 Vernon, 490. Lloyd v. Read, 1 Pr. W'ms, 607. Roberts on Frauds, 424. Pole v. Pole, 1 Ves. Sr., 76. That is, the advancement is not *bona fide*, but a mere subterfuge to hide the property from creditors, whilst the insolvent debtor may enjoy it. But if the debtor derives no personal benefit from the property, but the use is exclusively to the wife and children — if the debtor was insolvent — such a diversion and concealment of his means would be fraudulent. Money is liable to execution. First v. Miller, 4 Bibb, 311. Turner v. Fendall, 1 Cranch, 117. It was held by Underwood, J., in Doyle v. Sleeper, 1 Dana, 544, that it was fraudulent in a debtor to disable himself to pay his debts, by disposing of his money, in property, so that it can not be reached by legal process; and that it is fraudulent for a person to accept and hold as a gift, the money or property of a debtor, and thereby defeat the payment of pre-existing debts. If the money of the insolvent debtor has been converted into land, or other property

for the donee, the creditor may pursue the debtor's funds into the property and subject that. Upon whatever theory the Chancellor proceeds, the fundamental principle is, that the insolvent debtor can not purchase property for his wife and children, so that they may hold it in defiance of his creditors. Such purchases of lands, though not within the letter and terms of the statute of frauds, are nevertheless condemned by the common law.

The conveyance procured to be made by Meacham to his wife and children was, in equity, as if made to himself. That is, the property would be esteemed his, at the suit of creditors. If Meacham had a residence with his family upon the property, he would be entitled to the homestead exemption, because the creditor could treat the conveyance, made by Fitzgerald at his instance, to his wife and children, as inoperative and of no effect. As between the creditors and Meacham, the property belonged to the latter. If he, therefore, fulfilled all the conditions imposed by the statute to constitute the right, it should have been allowed to him.

The decisions in other states have been quite uniform, that although there may have been a fraudulent conveyance, yet that does not defeat the homestead. Legro v. Lord, 10 Me., 161. Vaughn v. Thompson, 17 Ill., 78. Wood v. Chambers, 20 Texas, 247. Lishy v. Perry, 6 Bush., 515. Pike v. Miles, 23 Wis., 164, and cases cited by counsel for appellee. By referring to the statutes of these states, as expounded in these cases, it will be observed that there is an absolute, unconditional exemption of the homestead from liability to judicial process, so that the property could not be pursued by a creditor in the hands of a vendee. The homestead exemption was as broad and complete, as were personal effects under statute of 1857. Upon which there would be no lien, dormant or contingent, by judgment, upon which the creditor had no claim, although the debtor may have parted with the possession. Smith v. Allen, 39 Miss., 473.

It was held in Whitworth v. Lyons, 39 Miss., 467, followed in

subsequent cases, that under the statute of 1857, the homestead was exempted on the condition of occupancy as a residence, and that when the occupancy was abandoned the right was gone, and the property was open to seizure and sale by judgment creditors, and to attachments. The distinguishing difference between this statute and those of the states to which we have referred is, that our statute makes the exemptions of the homestead dependent upon occupancy, whilst in the other states the exemption is absolute and unconditional.

Our statute of 1857 uses the words *owned* by and "occupied as a residence." We do not suppose that the word owned means anything more than the right or title by which the debtor occupies the premises. It is that "right" which the statute intends to protect. It matters not whether it be a freehold of inheritance, or less, or for a term of years, whether a legal or equitable estate, the creditor shall not interfere by legal process and break up the homestead.

The title of the exemptionist as said in Lessley v. Phipps, 49 Miss., 790, "is dependent on the facts of his being the head of a family, and residing upon the premises as a home. His title is manifested to creditors, by occupancy of the residence as head of a family. It is the implication of law from the facts."

Meacham was residing upon the property with his family, which the creditors subjected to their debts. He had such title to ownership as made the property liable, and therefore fulfills the conditions upon which the exemption depends. If his claim should be repudiated, the benefit intended by the statute will be denied to him. The case of Phipps v. Lessley is in point, to the effect that his right has not been lost.

The record does not contain evidence that the exempt homestead was worth $1,500, or what it was worth. The case seems to have been brought into this court to consider the question rather of the "right," than the amount allowed.

Meacham cannot be allowed exceeding $1,500. It may be

that what would be exempt to him would not be worth so much.

The decree is reversed, and cause remanded to the chancery court to make that enquiry.