# Fellows *v.* Lewis.

*Bill in Equity by Creditors, to set aside Fraudulent Conveyances by Deceased Debtor.*

1. *Grants of administration in different jurisdictions.*—When a decedent leaves property in different States or jurisdictions, and letters of administration on his estate are granted in each, each administrator has the same power and authority over the property within the jurisdiction which granted his letters, that properly pertains to a domiciliary administrator, and must be governed in the administration of the assets, and also in making settlements, by the rules and forms prescribed by that jurisdiction ; nor will resident creditors in any jurisdiction be permitted to suffer any wrong or injury in the distribution of the assets there, in favor of creditors who reside in another jurisdiction.

2. *Same: rights of creditors.*—The decedent having died in Alabama, where he resided, leaving property here, and also in Kentucky, the creditors residing here, and prosecuting their claims against his estate in Kentucky, can not be required to exhaust the assets found there before proceeding against the property here, or before attempting to subject in equity here property fraudulently conveyed by the decedent in his life-time ; but, while having a right to pursue their remedy in each jurisdiction at the same time, they can have but one satisfaction, and may be required to exhaust the other assets here before subjecting the property conveyed.

3. *When creditor may come into equity.*—The creditors of a deceased debtor may come into equity, to reach and subject property fraudulently conveyed by him in his life-time, whenever there is a deficiency of assets in the hands of his personal representative, without first exhausting their legal remedies.

4. *Voluntary conveyance ; validity of.*—As against the existing creditors of the grantor, a voluntary conveyance is constructively fraudulent and void.

5. *Two writings construed as one ; registration of conveyance reserving benefit to grantor.*—A conveyance of lands purporting to be executed "in consideration of a certain contract in writing this day entered into between " the grantor and the husband of the grantee, and the said written contract, relating to the same subject-matter, are to be construed together as one entire contract and transaction ; and if the deed is absolute and unconditional, while the written contract reserves to the grantor a substantial benefit and interest, the failure to record the latter avoids the conveyance as to existing creditors.

6. *Voluntary conveyance of homestead.*—A voluntary conveyance of his homestead by a debtor is not constructively fraudulent as to his creditors, since they can not be injured by it ; but, on his death, unmarried, leaving neither wife nor child, his right of exemption ceases, and the property may then be subjected by his creditors.

7. *Insolvent estate ; removal of settlement into equity.*—The original bill having been filed by creditors of a deceased debtor, whose estate had been declared insolvent, seeking to set aside, as fraudulent and voluntary, conveyances made by the debtor while living, and to subject the property conveyed to the satisfaction of their debts ; and the defendant having filed a cross-bill, asking that the creditors be required to exhaust the other assets before subjecting the property so conveyed to them ; *held*, that under the general prayer, contained in each bill, the settlement of the estate was properly removed into the court, in order that the assets might be administered on this equitable principle.

APPEAL from the Chancery Court of Dallas.

Heard before the Hon. CHARLES TURNER.

The original bill in this case was filed on the 6th August, 1877, by William H. Fellows, as the administrator *de bonis non* of the estate of Thornton B. Goldsby, deceased, John H. Chapman, John F. Blevins, and others, creditors of Ben. Edwards Grey, deceased, against John White, as the personal representative of the estate of said Grey, and against Charles T. Lewis and his wife, Henrietta M. Lewis; and sought to set aside as fraudulent, either actually or constructively, several conveyances of property made by said Grey to said Lewis and wife, as hereinafter more particularly described, and to subject the property to the satisfaction of the complainants' several debts. Said Grey died in Dallas county, where he resided, on the 1st March, 1875; and his last will and testament was there duly admitted to probate. On the 27th December, 1876, his estate was regularly declared and decreed insolvent. All the creditors who joined in the bill as complainants were residents of Alabama.

The conveyances sought to be set aside, copies of which were made exhibits to the bill, were the following: 1. A deed dated the 5th December, 1874, by which said Grey conveyed to Mrs. Lewis the tract of land on which he resided, and which contained eight hundred acres. This deed, which was duly admitted to record on the 14th December, 1874, on the acknowledgment of the grantor, purported to be executed "in consideration of a certain contract in writing, this day entered into between Charles T. Lewis, husband of Henrietta Lewis, and myself" [said Grey], "and in further consideration of the sum of one dollar to me in hand paid by said Henrietta Lewis"; and it contained no covenants of warranty, except such as might arise from the use of the words *grant, bargain, and sell.* 2. A deed dated the 14th December, 1874, by which said Grey, conveyed to Mrs. Lewis, on the recited consideration of $600, three lots in or near the city of Selma, each containing four acres; and which was attested by two witnesses, but does not appear, as copied in the transcript, to have been acknowledged, proved, or recorded. 3. The "contract in writing" between Grey and Lewis, referred to in the first deed to Mrs. Lewis as constituting its consideration, which was signed by said Grey and Lewis, attested by two witnesses, and in the following words:

"*Know all men by these presents*, that in consideration that Ben. Edwards Grey has this day conveyed to my wife, Henrietta Lewis, his plantation in Dallas county, Alabama, known as the 'Jones Place', and for the further consideration of the property which, by the provisions

of this contract, has come into my possession and ownership this day, as hereinafter set forth, I do hereby agree to live on said plantation, and to give all my time and personal attention to the cultivation of, and the carrying on of the affairs and business of said plantation, at my own expense, and to pay over to the said Ben. Edwards Grey, on or before the first day of January of each year, one-half of the net profits made from cultivating said place, with the reservations and restrictions hereinafter set forth. I further agree to board, free of charge, the said Ben. Edwards Grey, his two horses, and servant, at my residence on said place. It is understood and agreed that, in making the estimate as to what portion of the expense of carrying on said place said Grey is to pay, in order properly to make up the estimate of net profits, the said Grey is to be charged with only one-half of the overseer's wages and expenses, with one-half of the expenses and wages of those hands who may be worked on said plantation for wages, and with one-half of the bagging and ties ; but he is in no instance to be charged with any portion of the expenses of the hands who may be worked in *squads*. Grey has this day turned over to the said Lewis all the mules, cattle and sheep, the wagons, farming implements, &c., now on this plantation ; also, all the corn and provender ; and it is understood and agreed that, as Grey furnishes all the corn and fodder for the first year of this contract (1875), he is not to be charged in any future year with any portion of costs or expenses of the corn and provender ; and all such, for future years, is to be furnished by Lewis at his own expense, over and above what may be raised on the plantation. If it should so happen that said plantation should, in any year, fail to make any net profits, Grey is not then, in any event, or under any circumstances, to be liable for any part of said losses or expenses ; for said Lewis is to have, from this day, entire and sole control of the management of said plantation, but is not to be paid by said Grey anything for his services, except as above provided. None of the stock or property belonging to the plantation is to be removed therefrom, or used for any other purpose, except in carrying on the undertakings of this contract during the continuance of this contract. This contract is to go into effect this day, and is to be binding on the executors and representatives of said Lewis, and is to continue in force during the life-time of said Grey ; *provided*, however, that should Grey's death occur after the first day of April of any year, then this contract extends to the end of that year, just as if he had died on the last day of that year. Said Lewis is to have and to hold all of said stock, wagons, mules, corn

provender, implements, gins, and every species of property on said plantation, as his own property, and is to take full possession and ownership of the same this day; *provided*, that Grey reserves the right to dispose of his horses, and buggy, and carriage he may have at his death. In making up the account at the end of each year, to show net profits, it is agreed and understood that Grey is to be charged with no part or portion of any of the expenses, except those hereinabove specified as to be charged to him. Witness our hands and seals," &c.

The bill alleged that, at the time these several conveyances were executed, said Grey was indebted to the several complainants in the amounts stated in the bill, and was greatly embarrassed, and was pressed by his creditors; that his pecuniary condition was well known to said Lewis and wife, Mrs. Lewis being his niece; that the deeds and contract conveyed all his property in Alabama; that the conveyance of the town lots recited a simulated consideration, and was in fact without any valuable consideration whatever; that the conveyance of the plantation, and the written contract referred to in it, were executed at the same time, and as parts of one and the same transaction; that they were fraudulent, in fact and in law, as against the complainants, because the consideration was grossly inadequate, and because a secret benefit was thereby reserved to the grantor, which did not appear on the face of the recorded deed, and because the transaction was intended to shield Grey's property from the claims of his creditors.

Lewis and wife filed a joint answer. They admitted that Grey owed some debts at the time he executed said several conveyances, but denied that he was embarrassed; denied, also, that the deeds conveyed all his property in Alabama; and alleged that he then had a valid claim against the United States for more than one hundred bales of cotton, on which he expected to realize about $15,000, and a valid claim against the Mobile Trade Company for about fifty bales of cotton, which was then in suit (reported as *Grey's Executor v. Mobile Trade Company*, 55 Ala. 387), besides other property and claims, and a considerable estate in Kentucky, greatly exceeding in value the amount of his debts. They admitted that the conveyance of the town lots was without valuable consideration, but denied that it was executed with any fraudulent intent; and alleged that the lots were of but very little value, and that neither of them knew anything about it until the delivery of the deed, and supposed it was only a part of Grey's general plan by which he sought to relieve himself entirely of the cares of business, and in pur-

[Fellows v. Lewis.]

suance of which the contract and deed for the plantation were executed. As to this contract and conveyance, they denied all fraud in fact or in law, and alleged that it was valid, and founded on an adequate consideration; that Grey's health had become infirm, and he found himself unable to superintend his plantations and other business affairs; that respondents were residing in Kentucky, in August, 1874, when said Grey, who was the uncle of Mrs. Lewis, induced them to remove to Alabama, and to reside with him on his plantation, in order that said Lewis might assist him in the management of his business, as far as possible, and that Mrs. Lewis might wait upon him in his declining years and ill health; that he then proposed and promised, if they would so remove, to make the deed and contract afterwards executed in pursuance of his promise; that they removed to Alabama, at great expense, in consideration of Grey's said promise, and fully complied with all the stipulations of the contract up to the time of his death; that they then knew nothing of Grey's pecuniary embarrassment, if he was in fact embarrassed, but knew that he was possessed of a large estate in Alabama, and also in Kentucky. They alleged, also, that the complainants had all filed their debts as claims against the estate of said Grey, and had instituted legal proceedings in Kentucky, to subject the property there to the satisfaction of their debts, as might be done by the statutes of that State; and claimed that a part of the plantation, including the dwelling-house and one hundred and sixty acres of land, was the homestead of said Grey at the time said deed and contract were executed, and when the complainants' debts were contracted, and was not subject to the payment of his debts, though he might lawfully convey it as by said deed it was conveyed. And they filed a cross-bill, asking that the homestead might be secured to them, if the residue of the plantation should be held liable to the complainants' debts; and that the complainants might be required to exhaust all the other assets in Alabama, and also the property in Kentucky which might not be taken by resident creditors there, before subjecting any of the property conveyed to either of the respondents.

On final hearing on pleadings and proof, and on demurrers and motion to dismiss for want of equity, the chancellor held—1st, that the conveyance of the town lots, being purely voluntary, was constructively fraudulent in law, as against the complainants, whose debts were created before the execution of said conveyance; 2d, that the conveyance of the plantation, and the written contract between Grey and Lewis, being construed together as parts of one and the same

transaction, and considered in connection with the proof of Grey's pecuniary condition at that time, and all the attendant circumstances, were also constructively fraudulent, because not founded on a valuable consideration, though no fraudulent intent could be imputed to the parties : 3d, that the claim of homestead, as set up in the cross-bill, could not be sustained ; 4th, that the defendants were entitled, under the cross-bill, to require that the complainants should exhaust all the assets of Grey's estate in Alabama, and also all the assets against which they were proceeding in Kentucky, before they could subject any of the property conveyed to the defendants ; and, 5th, that the administration of Grey's estate should be removed into the Chancery Court, in order that it might be there settled, and the accounts stated, according to the principles declared in the opinion.

From this decree each party appeals, and each assigns errors in this court. The errors assigned by the complainants are : 1st, that the chancellor erred in not holding the conveyances to be fraudulent in fact, as well as in law ; 2d, in holding that the complainants must have the assets of Grey's estate in Alabama distributed and exhausted, before they could subject the lands conveyed to Mrs. Lewis ; 3d, in requiring the complainants to prosecute their suits in Kentucky, and to account for the assets they might there receive, before proceeding against said lands ; 4th, in removing the settlement of Grey's insolvent estate into equity ; 5th, in granting any relief under the cross-bill, and in overruling the demurrer to it. The cross-assignments of error by the defendants are : 1st, overruling the motion to dismiss the bill for want of equity ; 2d, holding the conveyances to Mrs. Lewis to be constructively fraudulent ; 3d, holding that the conveyance of the plantation was voluntary ; 4th, not sustaining the claim of homestead ; 5th, removing the administration and settlement of Grey's estate from the Probate Court. There were, also, assignments of error founded on the chancellor's rulings on questions of evidence, which require no notice.

PETTUS & DAWSON, BROOKS & ROY, and FELLOWS & JOHN, for the complainants.—1. A voluntary conveyance is fraudulent and void, as against existing creditors.—*Cato v. Easley*, 2 Stew. 214 ; *Miller v. Thompson*, 3 Porter, 196 ; *Gannard v. Eslava*, 20 Ala. 732 ; Bump on Fraudulent Conveyances, 2d ed., 269. When the vendor is insolvent, or greatly indebted, mere inadequacy of price is a badge of fraud, and may be so gross as to enforce the conviction that such a sale could not

have been made in good faith.—*Borland v. Mayo*, 8 Ala. 117; *Prosser v. Henderson*, 11 Ala. 487; *Bibb v. Freeman*, 59 Ala. 612. Under these authorities, there can be no controversy as to the conveyance of the town lots, which recites a simulated consideration, and is admitted to be without any valuable consideration whatever. The conveyance of the plantation, and the written contract between Grey and Lewis, are to be construed as parts of one and the same transaction.—*Sewall v. Henry*, 9 Ala. 30; *Strong v. Brewer*, 17 Ala. 712; *Byrne v. Marshall*, 44 Ala. 355. Thus construed, the transaction was a gift, under the authority of *Bibb v. Freeman* (59 Ala. 612),—a case which closely resembles this. These instruments, thus construed, are fraudulent and void, because the conveyance is absolute on its face, and yet the grantor reserves to himself, by the unrecorded contract, a support during life, and half of the net income of all the property.—*Richards v. Hazzard*, 1 Stew. & P. 156; *Ticknor v. Wiswall*, 9 Ala. 308; *Montgomery's Executors v. Kirksey*, 26 Ala. 185; *Constantine v. Twelves*, 29 Ala. 614; *Reynolds v. Crook*, 31 Ala. 636; *King v. Kenan*, 38 Ala. 71; *Stokes v. Jones*, 18 Ala. 734; *Lukins v. Aird*, 6 Wallace, 78. When considered in connection with the evidence, the gross inadequacy of the consideration, if it can be treated as valuable at all, stamps the conveyance as fraudulent. By them, property worth about $14,000 is conveyed presently, and absolutely, in consideration of a promise by the grantees to support a feeble old man during life, and to give him one-half of the net profits each year, if he should live until April; and, as he died in March, only a few months after the consummation of the contract, the consideration actually paid, for all this property, was the board of the grantor during these few months, out of his own property.

2. The cross-bill is without equity, in either aspect in which it seeks relief. That the defendants cannot force Grey's creditors to go beyond the jurisdiction of the court, in search of assets out of which to obtain satisfaction of their debts, is settled by the decisions of this court.—*Price v. Mazange*, 31 Ala. 708; *Richards v. Hazzard*, 1 Stew. & P. 156; *Snedecor v. Burnett*, 9 Ala. 434. If the conveyances are held free from fraudulent intent, or fraud in fact, and the defendants bring other assets within the jurisdiction of the court, they may exonerate their property to that extent; but they must become the actors for this purpose.—*Leonard v. Forcheimer & Lassabe*, 49 Ala. 145. The claim of homestead, as asserted in the cross-bill, can not be sustained. Most of the complainants' debts were created before the passage of the act of April 23, 1873, and the claim of homestead must be

determined by the provisions of the constitution of 1868.—
*Wilson v. Brown*, 58 Ala. 62; *Gunn v. Barry*, 15 Wallace,
610. By that constitution, only eighty acres were exempted
as a homestead, including the dwelling and appurtenances,
" to be selected by the owner "; and if Grey had a right of
homestead, it was never perfected by claim and selection.
Moreover, his right of homestead, if he had perfected it,
would have ceased at his death, leaving neither wife nor
child. If the proposition can be supported at all, that a
homestead can not be the subject of a fraudulent sale or con-
veyance, because creditors can not be thereby injured, it can
only be applicable to a homestead which has been selected
and set apart from other lands.—*Stevenson v. White*, 5 Allen,
Mass. 148. But a homestead can not be claimed out of
property fraudulently conveyed.—Bump on Fraud. Convey-
ances, 464. A deed void for fraud, as to part, is void as to
all the property conveyed by it.—*Ticknor v. Wiswall*, 9 Ala.
311; *Hyslop v. Clark*, 14 Johns. 464; *Austin v. Ball*,
20 Johns. 442; 5 Cowen, 547; 4 Serg. 541. The claim of
homestead, moreover, is inconsistent with the asserted valid-
ity of the conveyance as a sale.

3. The chancellor erred in removing the settlement of
Grey's insolvent estate into his court, *ex mero motu*. There
was no prayer in either bill for the removal, and neither
party asked it. The Probate Court had acquired jurisdic-
tion of the settlement, and no special equitable reason for
the removal was alleged or shown.—*Gould v. Hays*, 19 Ala.
450; *McNeill v. McNeill*, 36 Ala. 115; *Hill v. Armistead*,
56 Ala. 120; *Weakley v. Gurley*, 60 Ala. 409.

SATTERFIELD & YOUNG, and LAPSLEY & NELSON, for Mrs.
Lewis.—1. The conveyance of the plantation to Mrs. Lewis,
whether construed by itself, or in connection with the con-
tract to which it refers, is supported by a consideration which
is both valuable and adequate. Under the provisions of
that contract, Lewis might have been ruined, if farming had
proved unprofitable, since he was to bear all the losses, and
yet was to divide the profits. Besides the possible loss and
detriment to Lewis, and the money value of Grey's board,
the care and attendance bestowed on him by Mrs. Lewis, in
his feeble health, was a very valuable consideration : as one
if the witnesses said, " it was worth all that a person was
able to pay for it." The consideration of the deed, as recited
and proved, is fully sustained by *Washburn v. Washburn*,
27 Conn. 424; *Rockhill v. Spraggs*, 9 Ind. 32; *P. & M. Bank
v. Borland*, 5 Ala. 531; *Borland v. Walker*, 7 Ala. 269. If the
conveyance were tainted with a fraudulent intent, the inquiry

[Fellows v. Lewis.]

as to the adequacy of the consideration would be different. *Crawford v. Kirksey*, 55 Ala. 292 ; 3 Washb. Real Property, 320. But the facts in proof repel every suspicion of fraud, and show the utmost good faith on the part of both grantor and grantees. The amount of Grey's debts was insignificant, when compared with the property which he possessed, both here and in Kentucky ; and his anxiety to pay them, as proved by many witnesses, was a subject of frequent discourse. No secrecy attended any part of the transactions, and their provisions were generally known in the neighborhood. As to the town lots in Selma, there is no proof that Grey owed them on the 14th December, 1874, when the deed to Mrs. Lewis bears date ; and no relief can be had as to them, in the present state of the pleadings and proof.—*Alexander v. Taylor*, 56 Ala. 60 ; 1 Dan. Ch. Pl. 362.

2. The complainants might not have been required, in the first instance, to proceed against the assets in Kentucky ; but, having elected to do so, they will be held to their election. As upholding the principle of election in analogous cases, see *Nunn v. Norris*, 58 Ala. 204 ; *Butler v. O'Brien*, 5 Ala. 316 ; *Pickens v. Yarborough*, 30 Ala. 408 ; *Williamson v. Ross*, 33 Ala. 509. "The principle of election has been applied, also, where there was one suit in this country, and another for the same matter in a foreign court of competent jurisdiction."—1 Dan. Ch. Pl. 815-6. The special circumstances of this case, as disclosed by the record, "create an equity justifying the court here in taking cognizance of matters transacted by a foreign administrator," as in the case of *Wright v. Phillips*, 56 Ala. 69. It is shown that there are very few creditors in Kentucky, and that, by the statutes of that State, the administrator here has the right to recover the residue of the assets for the Alabama creditors.

3. The respondents were entitled to have all the assets of Grey's estate in Alabama first subjected and distributed, as prayed in their cross-bill.—*Leonard v. Forcheimer & Lassabe*, 49 Ala. 145. The original bill was wanting in equity, and should have been dismissed on motion, because it did not ask the removal of the settlement into equity for that purpose.—*Pharis v. Leachman*, 20 Ala. 662 ; *Quarles v. Grigsby*, 31 Ala. 172 ; *Ellis v. State Bank*, 30 Ala. 478 ; 1 Story's Equity, 399, § 371.

STONE, J.—Although it is true decedents can leave but one estate, in whatever different jurisdictions it may be situated, there may be, and often are, two or more different administrations, if the property be in two or more States. The administration granted at the place of the last resi-

dence, is called the domiciliary administration ; but administrators appointed in other jurisdictions have the same title in, and power over the property within their jurisdiction, as the chief administrator has over the property within his jurisdiction. Each, in the performance of his duties, must conform to the laws of the State in which he receives his appointment. When administration is granted on the estate of one decedent in two or more jurisdictions, the questions of State policy and the duty of the sovereignty are brought into requisition and exercise. The duty of the State to its own citizens requires that, to the extent of the assets within its jurisdiction, resident creditors, if there be such, shall suffer no wrong, and shall not be subjected to any discriminations in favor of creditors residing within a different jurisdiction, although it may be the State of the decedent's last residence. Neither jurisdiction can force the other to yield to it precedence, or dictate to it in what manner it shall exercise its authority. " The rules of every empire, from comity, admit that the laws of every people, in force within its limits, ought to have the same force everywhere, so far as they do not prejudice the power or rights of other governments, or of their citizens. " Comity goes no further than this.—Story's Confl. Laws, § 29. So, in the matter of administering assets, and of making settlements, each administrator must conform to the rules and forms prescribed in his own State, no matter how variant the rules and forms of the two States may be.

Mr. Grey died, having his last residence in Alabama. He owned property in this State, and also in the State of Kentucky. There was, also, a valuable property in this State, conveyed by him shortly before his death, which his creditors claimed was liable to the satisfaction of their demands. The grounds on which this claim was founded were—first, that the conveyance was voluntary, and without valuable consideration ; and, second, that it was made with intent to delay, hinder, or defraud his creditors. These debts were contracted long before the making of the conveyances which the bill seeks to set aside. On this hypothesis, the administrator could assert no power or right over this property, and the creditors alone could move in the matter. The defense set up by the cross-bill is, that decedent left ample property in the State of Kentucky, for the payment of his debts, and that most or all of the creditors, complainants in this suit, had instituted proceedings in Kentucky for the collection of their claims there. The prayer of the cross-bill is, that complainants be required to exhaust the assets in the State of Kentucky, which had not been conveyed by Mr.

[Fellows v. Lewis.]

Grey, before proceeding to subject the property in contro-versy, which had been conveyed to the complainants in the cross-bill. The chancellor took this view of the case, and so decreed.

There is no question, that there was, and is, a deficiency of assets in the hands of the Alabama administrator, to pay the debts which this bill seeks to collect. This being the case, complainants had a clear right to file this bill. *Pharis v. Leachman*, 20 Ala. 662; *Watts v. Gayle, Ib.* 817; *Bibb v. Freeman*, 59 Ala. 612. We hold, also, that they had an equal right to proceed to collect their claims out of the Kentucky assets, and that pursuing one, did not disable them from prosecuting the other recourse. This might, and in many cases would become necessary, to prevent a failure of justice. Of course, there could be but one satisfaction. The case is not distinguishable, in principle, from several actions prosecuted against different persons liable on a several, or joint and several debt. A judgment may be recovered against each, but a payment of one is a satisfac-tion of all the plaintiff is entitled to. The chancellor erred in decreeing this relief on the cross-bill.

We think the conveyances to Mr. and Mrs. Lewis, as against existing creditors of Mr. Grey, must be pronounced voluntary, and, at least, constructively fraudulent.—*Bibb v. Freeman, supra*; *Sandlin v. Robbins*, 62 Ala. 477.

But this question, as to the plantation conveyed to Mrs. Lewis, is presented in another aspect. The deed to Mrs. Lewis had the effect of rendering Mr. Grey's estate insolvent, so far as there were assets in the State of Alabama. The deed of December 5th, 1874, and the "certain contract in writing" therein referred to, of the same date, were executed at the same time, relate to the same subject-matter, and one is made a part consideration of the other. The two must be construed together, as constituting one transaction and one contract.—1 Brick. Dig. 386, § 169. The deed conveys to Mrs. Lewis a plantation of over 800 acres of land, "in con-sideration of a certain contract in writing this day entered into between Charles T. Lewis, husband of Henrietta Lewis, and myself [Grey], and in further consideration of the sum of one dollar, to me in hand paid by Henrietta Lewis." The deed is absolute and unconditional on its face, and purports to convey the absolute, unconditional, and unincumbered title, "to have and to hold to the said Henrietta Lewis, her heirs and assigns, forever." The deed was properly acknowl-edged on the 14th day of the same month, and was duly recorded in the proper office. The contract in writing that day executed between Grey and Charles T. Lewis, referred

(23)

[Fellows v. Lewis.]

to in the deed, reserves a very substantial benefit and interest to the grantor, Grey, to continue during his life. This contract in writing was not recorded. This avoided the deed as to existing creditors.—Code of 1876, § 2120; *Montgomery v. Kirksey*, 26 Ala. 172; *Wiley, Banks & Co. v. Knight*, 27 Ala. 336; *Reynolds v. Crook*, 31 Ala. 634; *King v. Kenan*, 38 Ala. 63. See, also, *Bryant v. Young*, 21 Ala. 264; *Hartshorn v. Williams*, 31 Ala. 149; *Sims v. Gaines*, 64 Ala. 392. So, the deed from Grey to Mrs. Lewis must be pronounced fraudulent in law, whether intentionally so made or not.

One purpose of the cross-bill is, to assert in Mrs. Lewis, the grantee, a right to Grey's homestead exemption in the lands conveyed. As against debts contracted before April 23, 1873 (See Pamph. Acts, 64), this claim, if valid, can not in quantity exceed eighty acres of the land. It is governed by the provisions of the constitution of 1868.—See *Wilson v. Brown*, 58 Ala. 62. The grounds on which this claim of exemption is based, are, that, at the time of the conveyance, Mr. Grey had his homestead and residence on these lands; that the homestead was, in his favor, exempt from levy and sale for the payment of his debts; that not being liable to his debts, his conveyance, even without consideration, could not delay, hinder, or defraud his creditors, for they had no rights in the premises, of which such conveyance could deprive them. If this position be sound, then Mrs. Lewis' claim and title are good; for Grey's deed to her is valid and binding between them, even though tainted with a fraudulent intent.

This question has been a great many times before the courts of the country, and, in a large majority of cases, the ruling was against the right of the creditor to subject the homestead, merely because its owner and occupant had conveyed his right to another, even though the conveyance was voluntary, or made under circumstances which would ordinarily stamp it as fraudulent. There can be no fraud, unless there are claims and rights which can be delayed and hindered, and which, but for the conveyance, could be asserted. The law takes no cognizance of fraudulent practices that injure no one. Fraud without injury, or injury without fraud, will not support an action. Unless they co-exist, the courts are powerless to render any relief.—*Castle v. Palmer*, 6 Allen, 401; *Legro v. Lord*, 10 Me. 161; *Foster v. McGregor*, 11 Ver. 595; *Danforth v. Beattie*, 43 Ver. 138; *Crummen v. Bennett*, 68 N. C. 494; *Sears v. Hanks*, 14 Ohio St. 298; *Vaughan v. Thompson*, 17 Ill. 78; *Muller v. Inderreiden*, 79 Ill. 382; *Anthony A. C. Co. v. Wade*, 1 Bush, Ky. 110; *Marton v. Rayan*, 5 Bush, Ky. 334; *Lishy v. Perry*, 6 Bush, Ky.

515 ; *Knevan v. Specker*, 11 Bush, Ky. 1 ; *Vogler v. Montgomery*, 54 Mo. 577 ; *Smith v. Brunsey*, 33 Mich. 183 ; *Hugunin v. Dewey*, 20 Iowa, 368 ; *Drentzer v. Bell*, 11 Wisc. 114 ; *Pike v. Miles*, 23 Wisc. 164 ; *Murphy v. Crouch*, 24 Wisc. 365 ; *Succession of Cottingham*, 29 La. Ann. 669 ; *Edmonson v. Meacham*, 50 Miss. 34 ; *Wood v. Chambers*, 20 Texas, 247 ; *McFarland v. Goodman*, 6 Bissell, 111 ; *Cox v. Wilder*, 2 Dillon, 45 ; *Smith v. Kerr, Ib.* 50. The following cases hold the contrary doctrine ; but in some of them, it will be seen, the facts were different : *Gotzler v. Saroni*, 18 Ill. 511 ; *Currier v. Sutherland*, 54 N. H. 475 ; *Henry's appeal, 29* Penn. St. 219.

In the cases cited above, negativing the liability of the homestead which has been fraudulently conveyed, the reasons given are substantially as follows. The property, homestead, is not liable to seizure under execution, and, therefore, a conveyance of it is a question in which the creditor has no interest. It was not liable, before conveyance, to the claim he asserts ; and the conveyance, though fraudulent, puts the creditor in no better condition than he was in before. If the conveyance is set aside as fraudulent, this leaves the homestead as if no attempt had been made to convey it, so far as any claim can be asserted by the creditor. It is void as to him, to all intents and purposes. He cannot be heard to say, in one and the same breath, that the conveyance is void, in its attempt to devest title out of the debtor, but is valid in destroying the homestead right. He can not claim both under and against the conveyance ; under it, as a valid parting with the homestead right ; against it, as an abortive effort to pass title out of the debtor. It must stand, as to him, as if no conveyance had been attempted.

The case of *Cox v. Wilder*, 2 Dillon, 45, was a suit by an assignee in bankruptcy, to set aside as fraudulent a deed by the bankrupt and his wife, conveying a body of lands. The deed was pronounced fraudulent, and was set aside. The question was, did these proceedings bar the dower-right of the wife? The rule as to dower is said to be the rule as to homestead.—Thompson on Homestead, sections, 405 to 409. DILLON, J., with his accustomed force, said : "We solve the question here presented as to dower, when we determine under whom the assignee claims, and to whose rights he succeeds. . . He claims not under, but adversely to the deed of Wilder. He succeeds to all the interests of the bankrupt, and represents his creditors, so far as to enable him to attack conveyances made by the bankrupt in fraud of their rights. He claims that the deed is void as to creditors, and on this ground alone he attacks it ; and upon this ground alone has he any right to the property. He says it

[Fellows v. Lewis.]

is void as to creditors, because fraudulent, and for this reason asks to be invested with the title which it fraudulently conveyed. He cannot claim *under* it, and must claim *against* it. When it is decreed to be fraudulent and void at his instance, how can *he* set it up to defeat the right of the wife to dower? Such a position involves this inconsistency, viz., that it asks that the same instrument be held void as to creditors, and then in their favor held valid as to the wife." In another place he says: "Similar considerations, in my judgment, apply to the *homestead* right."

*Lishy v. Perry*, 16 Bush, Ky. 515, was a case of homestead conveyed, which creditors sought to subject to their demands, for alleged fraud in the conveyance. The court said: "Whatever may have been his intention in making the conveyance to Clayton, it can not be said that any legal right of the appellants was violated by the conveyance of property which was exempt from liability to sale for their debt."

The deed under which Mrs. Lewis claims was, as we have said, executed on the fifth day of December, 1874. Mr. Grey, the grantor, died three months afterwards, and long before the bill in this case was filed. Neither at the making of the deed, nor at the time of his death, had he wife or child. He had his domicile on the lands in controversy, when he made the conveyance; and was entitled to a homestead exemption therein, under the constitution of 1868. What was the duration of his homestead claim? Did he hold the homestead by a tenure different from that by which he held his other lands? and if so, in what respect different? His title to the entire tract was a fee. The constitution and statute declare, that the homestead "shall be exempted from sale on execution, or any other process from a court, for any debt contracted since the thirteenth day of July, 1868, or after the ratification of this constitution." Mr. Grey, as we have seen, left neither wife nor child surviving him. Supposing he had died the owner of the homestead, without conveying it, what would have been its status? how held, and by whom held, after his death? Would its exemption from sale on execution, or other process of a court, for debt, have adhered to it, in the hands of his next of kin, as heirs at law? If so, then the homestead would have passed by descent to his heirs at law, and could not have been taken possession of, or utilized by his personal representative in the payment of his debts, although his estate otherwise might be insolvent. No one ever supposed that, on the death of a landholder, having a homestead, leaving neither minor child nor widow, the descent of the homestead is governed by rules different from those which govern in the descent of his other

landed estate.  All go alike to the devisee, or heir, subject
to a prime and paramount liability for the debts of the an-
cestor.  If decedent leave minor child, or widow, him surviv-
ing, then the exemption is prolonged; not otherwise.—Const.
of 1875, Art. 10, sections 2, 3, 5; Code of 1876, §§ 2820,
2821, 2840.  The exemption of Mr. Grey's homestead from
his debts was only during his life.

In the case of *Chambers v. Sallie*, 29 Ark. 407, the court
said : " The legal effect of the act is to create no new estate,
but to protect the occupant of the land in the use and occu-
pancy of the land so set apart as a homestead, during the
time of such occupancy; but, if abandoned, by removal or
death, leaving neither wife or children to succeed to his
rights, the rights of the judgment creditor would be fully
restored."—See, also, *Norris v. Kidd*, 28 Ark. 485.  If we
were to hold that, by Mr. Grey's conveyance of the home-
stead while he occupied it as such, he invested Mrs. Lewis
with a fee exempted from his debts, notwithstanding the
deed was voluntary or fraudulent, the result would be to
accord to a conveyance, which all the authorities say is inop-
erative against creditors, the wonderful power of converting
a temporary exemption from debt, into a fee simple absolute.
Upon a consideration merely good, he could not convey to
her greater rights and greater exemptions than he had him-
self.  Although Mrs. Lewis could hold the homestead during
the life of Mr. Grey, her authority and right ceased at his
death, and the property then became liable to his debts.
In other words, the conveyance vested in her all the rights
in the homestead which he could assert against his credit-
ors ; nothing more.

With the single exception of the error announced above,
we concur in all the conclusions reached by the chancellor,
in his very able and carefully prepared opinion.  The con-
veyances must be pronounced voluntary, and constructively
fraudulent, as againt existing creditors.—*Bibb v. Freeman*,
*supra ; Sandlin v. Robbins*, 62 Ala. 477.  We hold, also, there
is no ground on which to claim homestead.  We hold, too,
that the chancellor did right in decreeing that the assets in
the hands of the Alabama administrator must be first ex-
hausted, before these creditors shall be allowed to sell the
property conveyed to Mr. and Mrs. Lewis ; and to enable
the court to administer the assets on this equitable principle,
we approve the order, removing the administration into the
Chancery Court.  This the chancellor was authorized to do,
under the prayer for general relief, found in both the original
and cross bill.

The decree must be reversed on the errors assigned for

the complainants in the court below, and the cause remanded, to be proceeded in according to the principles of this opinion. There is nothing in the cross assignments by Mrs. Lewis, and she can take nothing thereby.